[No. 31879. *En Banc.* August 29, 1952.]

W. G. McLaren, *as Administrator de bonis non, Appellant,*
v. Charles Schalkenbach Home for Boys, Inc., *et al.,*
*Respondents.*[1]

*Elliott & Lee,* for appellant.

*Preston, Thorgrimson & Horowitz, Stewart N. Lombard,*
and *Max R. Nicolai,* for respondents.

Grady, J.—The subject matter of this appeal is a judgment of the superior court entered April 28, 1951, after a hearing had pursuant to the remittitur from this court remanding the case for further proceedings.

The action was commenced by the administrator *de bonis non* of the estates of Charles and Minnie W. Schalkenbach, deceased, to terminate a trust created by Charles Schalkenbach in his will upon the ground that the trust was impossible of fulfillment. The administrator recently died, and W. G. McLaren is now his successor. He has been substituted for the former administrator and will be referred to

[1]Reported in 247 P. (2d) 691.

as ·appellant. The reasons given were that the trust was impracticable and impossible of performance; that the operation of the home or institution described in the trust was contrary to public policy; that there were no persons eligible for or selected as beneficiaries of the trust; that there were not available any persons qualified or suitable to perform the duties of superintendent of the character of the home or institution defined in the trust provisions; and that such conclusions were justified by the fact that, after several years experience and effort in attempting to carry out the provisions of the trust, it had been demonstrated that further effort to. operate the trust would be futile. The trial court decided adversely to appellant.

Upon appeal, we reached the conclusion that there was sufficient evidence to warrant the findings of the trial court that the trustees had not abandoned the performance of the trust; that it was not impossible of fulfillment or performance; that its administration was not contrary to the public policy of the state; that there were persons eligible as beneficiaries of the trust; and that the operation of the home had not demonstrated that the trust was impracticable or impossible of performance.

In our opinion, we referred to the claim made that the trust should be terminated because of the abandonment of the purposes of the trust by the trustees. We said that, strictly speaking, this type of charitable trust could not be terminated because of the abandonment of the purposes of the trust by the trustees; but if they did so, or failed or refused to carry out the intention of the creator of the trust, it was the duty of courts of equity to require them to act or to appoint other trustees in their stead. We also recognized the rule that, if the purpose of a trust becomes impossible of accomplishment, the courts have authority to decree its termination. We were cognizant of the fact that, after the home had been operated from May, 1939, to June, 1943, the court permitted it to be closed for a period of two years and the building sold. In June, 1945, the cessation of operation was extended for an additional two years. This was because of the existence of the war. It appeared to us that after the

war ended August 14, 1945, the conditions which warranted the issuance of the orders permitting cessation of operation of the home did not longer exist. We expressed the view that the trustees should not be permitted to allow the trust to continue dormant, and that the continued cessation of operation was quite persuasive that the trust was impossible of performance.

We remanded the case to the trial court with directions to dismiss the complaint if by January 1, 1950, the trust was being administered according to the trust provision of the will of the decedent as we had interpreted it, and provided that, if it was not then being so administered, the court should declare the trust terminated and grant the prayer of appellant's complaint.

Our opinion is reported in 33 Wn. (2d) 255, 205 P. (2d) 345. In that opinion, we set forth the history and terms of the trust provision in the will of Charles Schalkenbach, and referred to the litigation over the same. We find it unnecessary to again review or repeat what has been said and decided by us with reference to the trust other than to make clear what was before the trial court on remand, and the questions we now have before us on this appeal.

Charles Schalkenbach was an immigrant boy, who, under many adverse circumstances, established himself and built up a substantial fortune. It was his desire to aid boys who, by reason of orphanage or abandonment by their parents, were obliged to go to work early in life, as had been his experience. With that thought in mind, he provided in his will that his trustees therein named should establish in the city of Seattle, Washington, a home for orphaned or abandoned working boys between the ages of twelve and sixteen years, who were trying to make their own living. He directed the trustees to use care and caution in the selection of boys before their admittance into the home in order to promote and maintain harmony therein. He made it an express condition that all boys admitted to the home must be working at least part time, temporary sickness or incapacity excepted, and be at least partially self-supporting, and that each must pay as much as possible toward the cost

of his board and keep in the home according to the schedule of rates established by the trustees and superintendent. He then gave directions with reference to the acquirement of a home in the city of Seattle, the investment of the balance of the corpus of the trust estate and the use of the income thereof in defraying the cost of operating and maintaining the home; also directions as to the employment of a superintendent, and other directions not necessary to set forth in this opinion, but all of which may be found in the trust provision of the will set forth in our former opinion.

On or about August 17, 1949, the trustees purchased a residence home located at 419 12th avenue north, Seattle. A superintendent was employed, and he, with the approval of the trustees, employed a cook and a housekeeper to maintain the home; also a trained social service case worker on a part time basis. The home was opened for use October 1, 1949. The trustees gave notice to various social service agencies that the facilities of the home were available to care for qualified applicants for admission. Between October 1, 1949, and December 31, 1949, the trustees received a number of applications for admission to the home. Some of the applicants were rejected because, in the opinion of the trustees, they did not meet the qualifications prescribed by the trustor. During that time, the trustees admitted four boys, whom they regarded as qualified under the interpretation they placed upon the terms of the trust.

On July 17, 1950, the respondents filed a motion for an order of the court dismissing the complaint of appellant on the ground that by January 1, 1950, the trust was being administered in accordance with its terms, and accompanied the motion with a report of the respondent corporation. This report contained a statement of the matters and things which the trustees had done with reference to carrying out the terms of the trust. The appellant filed an answer to the report denying substantially all of the allegations of fact set forth therein, and affirmatively alleged that the institution set up by the trustees October 1, 1949, was not and had not been operated as a home for orphaned or abandoned working boys between the ages of twelve and sixteen years as

provided by the trust, but on the contrary the trustees had attempted to set up an institution for boys other than working boys who were trying to make their own living; that the boys received into the home consisted of problem children not dependent upon their own labor or resources, but needing specialized clinical care and treatment. The appellant asserted in his answer that the institution was not being operated according to the terms of the trust, but contrary thereto, and again asked that the court enter a decree declaring the trust terminated and granting the prayer of the amended complaint.

The case came on for hearing April 2, 1951, before the same trial judge who heard the original case.

At the beginning of the hearing and throughout the proceedings, there were differences of opinion as to its scope and extent. The respondents submitted their case upon the theory that they were only required to demonstrate to the satisfaction of the court that by January 1, 1950, a home had been established and boys received therein who met the qualifications prescribed by the terms of the trust. The appellant sought to make inquiry in support of his claim that the trust provisions had not been met by January 1, 1950, of events transpiring thereafter and up to the time of the trial, from all of which it was claimed sufficient proof would appear warranting the conclusion that the trust was not being performed, and, in fact, was impossible of performance. The court ruled that the scope of the inquiry would be limited to what had transpired between the establishment of the home and January 1, 1950; although, when it appeared necessary in order to clarify and properly explain some of the evidence offered, the court relaxed the ruling made.

During the trial, the court entertained some doubt as to what we meant to convey by our order of remand with reference to the period of time relative to which the court should receive evidence as to whether the requirements of the trust had been met. Our consideration of the views expressed by the trial judge and the rulings made with reference to evidence offered makes it clear to us that he correctly inter-

preted our opinion and confined the issue to the question of whether by January 1, 1950, the trust was being administered under the provisions of subparagraph (d) of the seventh paragraph of the testator's will as had been interpreted by this court. The viewpoint of the trial judge is made very clear by his oral pronouncement made at the close of the trial after hearing argument of counsel. The court made findings of fact, conclusions of law, and entered a decree dismissing the action.

In view of the conclusion we have reached after examining that part of the record relating to what had been done by the trustees by January 1, 1950, towards the establishment of a home in accordance with the directions given by the trustor, we find it unnecessary to discuss many of the questions raised by appellant. The only questions we shall consider are whether by January 1, 1950, the trustees had established and were operating a home for orphaned or abandoned working boys between the ages of twelve and sixteen years, who were trying to make their own living, and whether the boys admitted to the home were working boys, at least part time, and were at least partially self-supporting.

In our order of remand, we made reference to our opinion in the case of *Reagh v. Hamilton,* 194 Wash. 449, 78 P. (2d) 555, and directed the trial court to use our interpretation of the trust as set forth therein. We construed the words "between the ages of twelve and sixteen years" to apply to the ages at which boys might be admitted to the home, but to have no reference to the age at which they should be discharged therefrom, such question being left to the discretion of the trustees.

On November 2, 1949, a boy of the age of thirteen years was received into the home. On December 14th, 28th, and 30th, three more boys of the ages of thirteen, fourteen and fifteen were received. Three of the boys had received aid from the department of welfare. They had lived in foster homes. One of them had for a time been at the Seattle Children's Home. Collectively speaking, they had been working boys, and occasionally received some compensation

for their services. One of them had been a ward of the juvenile court for a short time. The other boy had been the victim of a broken home. He had lived some of the time with his mother and at other times with his father. He ran away from each home; he had been expelled from school and became a ward of the juvenile court. Some of the boys had paper routes. We accept the finding of the court that all of these boys had been either orphaned or abandoned by their parents.

We do not accept the argument made by appellant to the effect that, in order to be eligible to enter the home, a boy must be presently employed, although the language of the trust taken literally seems to make such a condition to eligibility. It is our opinion that the trustees might properly receive a boy into the home who was able and willing to work for a living, at least part time, and allow him to secure or aid him in securing employment. We are of the opinion that the trustees made a good faith effort to establish a home for boys, but cannot accept their interpretation of the trust with reference to the class of boys eligible for admission. It is quite clear that the trustor had in mind boys who were somewhat in the same situation as he had been between the ages of twelve and sixteen years, that is, those who were on their own resources and were obliged to work for a living. The social security program with reference to child welfare has made it possible for boys of the ages mentioned who become orphans or have been abandoned to be provided with homes, either in institutions or in foster homes, and cease to be dependent upon their own resources. An effort is made to provide school advantages and to secure employment for such boys. We are not supplied with information as to whether the trustees might have found boys trying to earn their own livelihood without welfare aid to take into the home.

After the home was established by the trustees, application was made to the welfare department to present boys under its charge, and it was such boys who were received. It is apparent to us that, although the boys received into the

home were either orphaned or abandoned boys of the prescribed ages, nevertheless, they were not of the class which the trustor had in mind and designated as beneficiaries of the trust. They were not homeless boys dependent upon their own resources. Aside from very small earnings, their homes and maintenance were furnished by and through the welfare department. In the case of the first boy taken into the home November 2, 1949, the welfare department paid it the sum of $62.83 for his care and maintenance during that month. None of the other boys had been in the home a month, and no payments had been made on their account up to January 1, 1950. The trustees cannot meet the conditions of the trust by operating a home that is merely an adjunct to the welfare department, however laudable might be such an enterprise.

We remanded the case to the trial court so as to give the trustees an opportunity to resume operation of the trust and provide a home for the class of boys contemplated by the trustor. We are of the opinion that this was not accomplished by January 1, 1950. We decided that if the trust was not being administered under the provisions of the trust set forth in the will of the trustor by January 1, 1950, the trust should be terminated and the prayer of appellant's complaint should be granted. In view of all that has transpired in connection with the administration of the trust and the efforts made to execute it, we do not believe the discharge of the trustees and the appointment of others would solve the problem presented. We think the solution lies in the termination of the trust.

We, therefore, remand the case to the trial court for the entry of a decree accordingly. No costs shall be taxed to either party in this court.

Schwellenbach, C. J., Mallery, Hamley, Donworth, and Weaver, JJ., concur.

Hill, J. (dissenting)—I agree with the majority that the present trustees were not operating, on January 1, 1950, such a home as Charles Schalkenbach envisioned; it was

merely an adjunct of our child welfare program—useful, perhaps, but not what was intended.

As we said in *Townsend v. Schalkenbach Home for Boys,* 33 Wn. (2d) 255, 205 P. (2d) 345, if the trustees refuse or fail to carry out the intention of the settlor of a trust, it is the duty of the court of equity to require them to act or to appoint other trustees in their stead. I am, however, of the view that we went too far in that opinion when we announced that the trust should be terminated unless the trustees were, by January 1, 1950, operating such a home as Mr. Schalkenbach had created the trust to establish. We should have confined ourselves to a statement that, unless the trustees did have such a home in operation by that time, the superior court should appoint new trustees.

It is the impossibility of performance of a trust, not the failure of the trustees to carry out its terms by a certain date, that warrants its termination. I do not believe that this trust should be terminated unless and until we are prepared to say that it is contrary to the public policy of this state for orphaned or abandoned boys between the ages of twelve and sixteen to endeavor to make their own living. It may be that the Horatio Alger, Jr., type is obsolete and that his very existence is contrary to now-prevailing public policy; appellant so argues quite frankly. If so, we should hold that the trust should be terminated for that reason, not because the trustees did not meet a deadline which we had fixed.

I am not prepared as yet to withdraw from the position we took in *Townsend v. Schalkenbach, supra,* that such a trust is not against the public policy of the state. I would not terminate the trust; but the trustees, having failed to meet our deadline, should be changed. I do not think the trustees looked in the right places for boys of the type Mr. Schalkenbach desired to help.

I dissent.

OLSON, J., concurs with HILL, J.

FINLEY, J. (dissenting)—I glean from the record in this case that Mr. Schalkenbach belonged to that category of vanishing Americans whose motto might well have been,

"The difficult, we do right away; the impossible may require a little time." I feel most strongly that we made a mistake in setting the deadline of January 1, 1950, for termination of the trust, unless the trustees complied with its terms by that date, particularly, since we said nothing about a change of trustees. I do not think Mr. Schalkenbach would have given up on his ambition to establish the trust to help deserving young men if *one set* of trustees failed to implement, or accomplish, his desired aims. I am sure he would have tried further, by carefully selecting at least one new and different set of trustees and allowing them a reasonable opportunity to perform. The heirs have kept this matter in litigation, and they must have given the trustees considerable trouble in their efforts to make the trust work. The heirs may be disappointed if new trustees should be appointed and allowed further reasonable time to effectuate the trust; but, in view of their aggressive and possibly troublesome actions, any complaint from the heirs should not be accorded too much emphasis, or be heard too readily.

I concur in Judge Hill's dissent.

---

December 8, 1952.   Petitions for rehearing denied.