OPINION OF THE COURT
Evans V. Brewster, S.
In this proceeding, the petitioners seek reformation of testamentary trust provisions in decedent’s will and the reformation of an inter vivos trust executed by the decedent a number of years prior to the execution of his will. The petitioners urge that the proposed reformation is necessary to achieve the fulfillment of decedent’s intention to create a testamentary plan which would provide the greatest benefit to members of his family and would also accomplish his ultimate charitable goals. Should the proposed judicial surgery not be authorized, the petitioners contend that the decedent’s testamentary plan will be undermined if not destroyed by the change of circumstances which have occurred since his death.
A brief review of the events preceding the filing of the present petition will facilitate comprehension of the consequences of events which have occurred since decedent’s death upon his testamentary objective.
*356 In a trust agreement dated December 28, 1928, an inter vivos trust was created by decedent which provided that all of the net income was payable to grantor’s wife for life and upon her death (which occurred in 1947), the trustees were directed to divide the corpus into two equal and separate trusts. One trust was to be held for the benefit of the grantor’s daughter, Estelle Ekstrand, also hereinafter referred to as Estelle Bernadotte af Wisborg, and the other trust was to be held for the benefit of the grantor’s son, Hiram E. Manville, Jr. The net income of each trust was payable to the above beneficiaries for life and upon the death of each secondary life income beneficiary, the remainder would pass to their respective issue per stirpes. Both secondary income beneficiaries survive and each has issue surviving. The children of the daughter are Bertil Bernadotte and Folke Bernadotte who are residents and citizens of Sweden. The children of the son are residents of the United States.
The decedent died a resident of Westchester County on June 27, 1944 leaving a last will and testament dated August 12,1943 which was admitted to probate on August 1, 1944. After providing preresiduary gifts for his wife, daughter and son, the decedent created a testamentary trust of the residue of his estate in which each child was designated a beneficiary for life of one third of the income. The remaining third of the income was to be used for charitable purposes by entities selected and designated from time to time by the trustees. Upon the death of a child, his or her share of the income was to be applied for charitable uses, purposes and beneficiaries as provided in the subdivision directing the remaining third of the income to be used for charitable purposes. Upon the death of both the daughter and son, the entire net income or in the uncontrolled discretion of the trustees, any part or all of the principal may be paid to the public or charitable beneficiaries. An exhibit annexed to the petition indicates that the trustees have designated the ultimate charitable recipients of the income and principal of the testamentary trust.
If the children of decedent’s daughter were not citizens and residents of Sweden, there would be no need or purpose *357 for the present application. It is the impact of the Swedish gift tax laws upon the presumptive remainder interests of the grandchildren who are citizens and residents of Sweden which compels the petitioners to seek reformation of the inter vivos trust and the testamentary trust provisions in decedent’s will. The objective of this proceeding is to eliminate the impact of the gift taxes of Sweden upon the presumptive remainder interests of the grandchildren who are citizens and residents of Sweden.
While under Swedish law, the citizenship of a testator is determinative of the obligation to pay Swedish inheritance taxes, the citizenship of the donee of an inter vivos trust is determinative of the obligation to pay a Swedish gift tax. Thus if the presumptive remaindermen residing in Sweden survive their mother, a Swedish gift tax will be imposed upon the remainder interest distributed to them. No Swedish inheritance tax would be imposed upon the remainder interest of a testamentary trust received by a Swedish citizen. Pursuant to the provisions of the gift tax laws of Sweden, a Swedish gift tax of approximately 53% of the remainder interest received by the Swedish presumptive remaindermen, will be imposed at the time of the death of decedent’s daughter, Estelle Ekstrand. As the present value of the share of the inter vivos trust held for the benefit of Estelle Ekstrand, is approximately $2,266,000, a Swedish gift tax of approximately $1,200,000 would be imposed.
In order to avoid the exorbitant Swedish gift tax and to fulfill the presumed intent of the decedent to provide maximum benefit to the natural objects of his bounty, the petitioners seek to reform the inter vivos trust for the benefit of Estelle Ekstrand and Hiram E. Manville, Jr., and the testamentary trust so as to incorporate into the will the dispositive provisions of the inter vivos trust and to incorporate into the inter vivos trust, the testamentary trust provisions of the will. The petitioners also seek to have the present trustees of the inter vivos trust become trustees of the testamentary trust and the present trustees of the testamentary trust become trustees of the inter vivos trust. If granted, the trustees of each fund would continue responsibility for the trust for which they were originally *358 appointed and no gift taxes would be collected by the • Swedish Government.
This is a most novel and ingenious approach to the avoidance of the imposition of a burdensome and substantial gift tax. Although precedent exists for the reformation of a testamentary trust to conform with the provisions of the Internal Revenue Code to secure a charitable deduction when the intent of the testator is shown to have been to benefit charity, the petitioners have cited no precedent for the relief sought and none has been found by the court.
The guardian ad litem appointed to protect the interests of the infant children of Hiram E. Manville, Jr., has submitted a thorough and informative report in which the issues presented to the court are addressed and the interest of his wards are set forth. The reformation, if granted, would have no effect upon the infant contingent remaindermen. Further, the guardian ad litem oh behalf of his wards, obtained an agreement that the charges and expenses of this proceeding would be borne solely by the trust for the benefit of Estelle Ekstrand. As his wards would not be adversely affected by the granting of the reformation or by the expense of the proceeding, the guardian ad litem has indorsed the proposed reformation.
No lengthy arguments that equitable considerations exist are necessary. A recitation of the facts and circumstances discloses that the benefits which the decedent expected to confer upon his family members will be drastically reduced by the imposition of the Swedish gift tax. While the Surrogate’s Court is historically and constitutionally a court of equity (NY Const, art VI, § 12, subd e), the question presented is whether the court has the power to or as a court of equity, should reform the inter vivos trust and decedent’s will to substitute one for the other, as requested by the petitioners.
Both the petitioners and the guardian ad litem argue that the decedent could never have intended that the principal vehicle for effectuating his plan to benefit his children and grandchildren would be virtually destroyed by the confiscatory gift tax now imposed by Sweden upon the receipt of the remainder of the inter vivos trust. On the *359 contrary, petitioners argue that the decedent intended and desired to primarily benefit the natural objects of his bounty; first his wife, then his children and finally his grandchildren. It is argued persuasively, that the size of the inter vivos trust establishes that it was the major source of assets utilized to carry out his dispositive plan as the remainder interest of the substantially smaller testamentary trust devolved to charities. Petitioners therefore argue that since it is the primary objective of courts to carry out the intention of a testator, the proposed reformations should be granted.
It is true that courts have exercised equity powers to reform an instrument to prevent frustration of the purposes of the creator of a trust where literal compliance would otherwise defeat the intent of the testator. Cases are cited by petitioners in which the courts made corrections, administrative amendments or interpretations of existing instruments to effectuate a testator’s avowed purpose particularly when changing circumstances would otherwise defeat it. (See Matter of Herzog, 301 NY 127; Matter of Pulitzer, 139 Misc 575, affd 237 App Div 808; Matter of Oppenheimer, 52 NYS2d 441.) In the many cases where the will had to be reformed in order to comply with the provisions of the Tax Reform Act of 1969, the underlying rationale was that once a testator’s testamentary intention to obtain a charitable deduction for his or her estate is recognized, the courts will reform the administrative provisions of the will, if necessary, to effectuate that intention. But in all the cases cited, it was the existing instrument on hand that was construed and reformed. However, the petitioners do not ask the court to construe or alter the terms of the inter vivos trust or the terms of the testamentary trust but rather to substitute or interchange the instruments, one for the other. The terms of the inter vivos trust would then be incorporated into the will as a testamentary trust and the testamentary trust would become the inter vivos trust.
While such a change may presently be a better dispositive plan for decedent’s grandchildren, the instruments themselves are devoid of any language evidencing an intent to avoid or to reduce the impact of estate, inheritance or gift taxes to a minimum. Mere speculation or the as *360 sumption that every person wishes to avoid the payment of burdensome taxes, cannot determine testator’s intent. It is from the language of the instrument that the intention of the decedent must be obtained, “not from a single word or phrase but from a sympathetic reading of the [instrument] as an entirety and in view of all the facts and circumstances under which the provisions * * * were framed.” (Matter of Fabbri, 2 NY2d 236, 240.)
The gift tax law of Sweden which imposes a tax on the donees of an inter vivos trust was in existence in 1928 when the inter vivos trust was created although the rate of the tax imposed has dramatically increased, particularly since the death of the testator. The petitioners speculate that the testator was never made aware of the existence of the gift tax which would be imposed upon the remainder interests by Sweden. At the time of the creation of the inter vivos trust, no gift tax law was in existence in the United States but an inheritance tax did exist. Thus, no gift or inheritance taxes have been paid upon the fund comprising the inter vivos trust. One might easily speculate that the creation of the inter vivos trust was to avoid the payment of inheritance taxes in the United States at the time of decedent’s death with full knowledge that a gift tax might be imposed by Sweden if any remaindermen were residents and citizens of Sweden at the termination of the trust. But speculation can be given no weight in determining this application.
The trust instruments before the court are not ambiguous and raise no question for construction. Each instrument is clear. The reformation requested is not with respect to the provisions of each instrument but only to effect a different distribution than that required by the literal sequence of testator’s plan. It is fundamental that “(t)he intention of a will-maker is to be found in the words used in the will, and when these are clear and definite there is no power to change them.” (Matter of Watson, 262 NY 284, 293.) The courts take the wills as they find them and unless contrary to some statute, give them effect as written. It is not for the court to rewrite a will or draw a new will for the testator (Matter of Watson, 262 NY 284, supra; Matter of English, 275 App Div 148, affd 300 NY 644). This *361 rule is not affected by the decision of the Court of Appeals in Matter of Snide (52 NY2d 193). In that case, where in a common execution ceremony of mutual wills, husband and wife executed by mistake the will intended for the other, the majority of the court permitted the correction of the obvious mistake noting that it was “dealing here solely with identical mutual wills both simultaneously executed with statutory formality” (p 197). Nor was it to be a precedent “in the exercise of judicial imagination relating to the reformation of wills” (p 197). Rather, it would appear that the dissent by Judge Jones and concurred in by two other members of the court continues to be the law that, “Under doctrines both of judicial responsibility not to allow the prospect of unfortunate consequence in an individual case to twist the application of unquestioned substantive legal principle and of stare decisis, I perceive no jurisprudential justification to reach out for the disposition adopted by the majority” (p 199). The dissent placed emphasis on following the basic rules of law.
The court can find no authority in law to grant the drastic change sought by the petitioner herein. The inter vivos trust and the will were executed independent of each other and nothing has been offered that establishes that the former instrument, drawn almost 15 years before the latter, is so interrelated that reformation is appropriate. Accordingly, the petition for reformation is denied.