[No. 25517. Department Two. September 18, 1935.]

JOHN D. REAGH *et al.*, *Appellants*, v. U. M. DICKEY
*et al.*, *Respondents*, MOLLIE PEIRCE MOLLER,
*Respondent and Cross-appellant.*[1]

[1]Reported in 48 P. (2d) 941.

*Matthew Stafford,* for appellants.

*John S. Robinson* and *Lyons & Orton.* for respondents Dickey *et al.*

*J. Speed Smith, Henry Elliott, Jr., Todd, Holman & Sprague,* and *Carl J. Smith,* for respondents Lane *et al.*

*James G. Mulroy,* for respondent and cross-appellant Moller.

HOLCOMB, J.—This is a suit for specific performance of a contract made under Rem. Rev. Stat., § 6894 [P. C. § 1440]. The action was brought by appellants as trustees under the will of Charles Schalkenbach and as trustees of the estate of Minnie Wood Schalkenbach, under and by virtue of a contract executed on June 23, 1926, by and between Charles Schalkenbach and Minnie Wood Schalkenbach, his wife. The defendants below, respondents here, are the executors of and beneficiaries under a will of Minnie Wood Schalkenbach dated November 2, 1928. In the contract of June 23, 1926, there were mutual promises not to revoke the mutual wills of same date.

In their pleadings, respondents cross-complained and asked that appellants be held to be trustees of the estate of Charles Schalkenbach for the benefit of the beneficiaries under Minnie Wood Schalkenbach's will of November 2, 1928, but at the trial all of respondents, with the exception of Mollie Peirce Moller, abandoned their cross-complaints and waived all claims to any part of the estate of Charles Schalkenbach. At the conclusion of the trial, the judge made findings and conclusions and entered a decree denying appellants any relief, holding that the contract of June 23, 1926, was void, and directing distribution of the estate of Minnie Wood Schalkenbach according to the terms of her will of November 2, 1928. The

decree also denied respondents' right to any part of the estate of Charles Schalkenbach.

Without signatures and acknowledgment, the contract of June 23, 1926, is as follows:

"THIS AGREEMENT, in duplicate, jointly made and entered into this 23 day of June, 1926, by and between Charles Schalkenbach and Minnie Wood Schalkenbach, husband and wife, of Seattle, Washington, pursuant to the provisions of section 5919 Remington & Ballinger's Annotated Codes, and statutes of Washington concerning agreements between husband and wife for the fixing of the status and disposition of community property to take effect upon the death of either Witnesseth:

"That in consideration of the mutual wills this day made, and of other good and valuable considerations mutually moving between them, the receipt whereof is hereby acknowledged, they have and do hereby covenant, promise and agree with each other as follows:

"FIRST: That all property of whatsoever nature or description whether real, personal, or mixed and wheresoever situated now owned or hereafter acquired by them or either of them shall be considered and is hereby declared to be community property.

"SECOND: That the status and disposition of the whole of said community property shall be and is hereby declared to be as provided in their mutual irrevocable last wills and testaments of even date herewith and by this reference hereby made a part of this instrument. True copies of said last wills and testaments are hereunto attached.

"THIRD: That this instrument and said last wills and testaments shall be and remain irrevocable except in the event that the parties hereto shall otherwise mutually agree in writing."

Rem. Rev. Stat., § 6894 [P. C. § 1440], reads:

"Nothing contained in any of the provisions of this chapter or in any law of this state, shall prevent the husband and wife from jointly entering into any agreement concerning the status or disposition of the

whole or any portion of the community property, then owned by them or afterward to be acquired, to take effect upon the death of either. But such agreement may be made at any time by the husband and wife by the execution of an instrument in writing under their hands and seals, and to be witnessed, acknowledged, and certified in the same manner as deeds to real estate are required to be, under the laws of the state, and the same may at any time thereafter be altered or amended in the same manner: Provided, however, that such agreement shall not derogate from the rights of creditors, nor be construed to curtail the powers of the superior court to set aside or cancel such agreement for fraud, or under some other recognized head of equity jurisdiction, at the suit of either party.''

After issues were joined by various affirmative pleadings on the part of respondents and replies on the part of appellants, the cause was tried to the court without a jury, which made the following findings of fact:

''That the defendant Lucy Leeds Wood resigned shortly after her appointment as executrix of the last will and testament of Minnie W. Schalkenbach, deceased, and such resignation was accepted by the above entitled court, sitting in probate, and said defendant Lucy Leeds Wood has made no appearance in this action.

''That Abe E. Ritzwaller was not guardian of the person or estate of Minnie Wood Schalkenbach at the time of the commencement of this action, and never appeared in this action as such guardian; that Minnie Wood Schalkenbach died on December 25, 1932, and this action was commenced on the 1st day of April, 1933.

''That Charles Schalkenbach and Minnie Wood Schalkenbach were husband and wife on the 4th day of July, 1926, the date of the death of said Charles Schalkenbach, and had been husband and wife for many years prior thereto. That all of their property, both real and personal, at the date of the death of

said Charles Schalkenbach, was community property.

"That said Charles Schalkenbach suffered many hardships by reason of poverty during his early life and was deeply interested in economic theories that would tend to improve the condition of the poorer classes. He was upright and honest in his business dealings; he was highly intelligent, and unusually well informed. He possessed a strong will, and great determination. His opinion on any subject quickly became a conviction, and once adopted, he neither invited nor tolerated further discussion. He had an overbearing and domineering nature, which manifested itself in his home life, as well as in his business relations. One of his economic theories was the establishment, maintenance and operation of municipal banks and as early as 1908 he expressed his determination in some manner to tie the hands of his wife, so that all the property of himself and wife should be left in trust for the establishment of such a bank upon the Pacific Coast.

"That for many months prior to the 23d day of June, 1926, Charles Schalkenbach had been in ill health, part of the time confined to his bed, and shortly before said date had been advised that he must undergo an operation for appendicitis and gall bladder trouble; that, desiring to make certain changes in a will made by him in 1919, he employed one Praeger, an attorney of Los Angeles, California, to prepare a contract and two wills, the contract to be signed by himself and wife, and one will to be signed by himself, and the other by his wife, which instruments he intended and believed would settle the status and disposition of all the property of himself and wife, and which would take effect upon the death of either.

"That said contract was executed by Charles Schalkenbach and Minnie Wood Schalkenbach on June 23, 1926; that said contract was prepared and executed under and pursuant to the provisions of Section 6894 of Remington's Revised Statutes of the State of Washington concerning agreements between husband and wife for the disposition of their community property, to take effect upon the death of

either; that during the preparation of said contract Charles Schalkenbach was advised by said lawyer that in his opinion the trust for the establishment of a municipal bank would be declared invalid, and said lawyer suggested that if such municipal bank trust were declared invalid, an alternative trust for the establishment of a home for boys should be created; that said Schalkenbach did not deem such alternative trust necessary, since he had received a legal opinion that a municipal bank trust would be declared valid, but upon the insistence of said lawyer that said alternative trust should be created, said Schalkenbach directed him to prepare a will creating an alternative trust for a boy's home. That said Charles Schalkenbach had no children and was never interested in children.

"That Minnie Wood Schalkenbach was never interested in the establishment of a municipal bank, nor of a boys' home; that she always desired her property to go to her relatives and certain charities in the City of Seattle; that she well knew the intensity of her husband's desire and determination that his and her estate should be devoted to the organization and operation of a municipal bank in some place on the Pacific Coast; that she executed said contract and will on the 23d day of June, 1926, solely because of the fact that she feared if she refused to sign said agreement and will, her said husband, Charles Schalkenbach, in his then weakened condition, would become so angry at her that such refusal would probably result in his death; that said Minnie Wood Schalkenbach was not advised by said attorney or any one else of her rights, nor was she informed by said attorney or any one else of the effect the signing of said contract would have upon her interest in the community estate; that there is no evidence in the record that she knew the value of the community estate; that she received no consideration for the execution of said contract and will, dated June 23, 1926.

"That the said Praeger was neither familiar with Section 6894 of Remington's Revised Statutes of the State of Washington, nor with the laws of the State of Washington relating to community property, and

he did not advise Mrs. Schalkenbach with reference to the effect that such contract and will would have upon her property rights. His demeanor upon the stand and his manner of testifying did not lend credence to his testimony that Mrs. Schalkenbach was advised by him as to her rights.

"That on the 4th day of July, 1926, Charles Schalkenbach died in the State of California, that thereafter the executors and trustees named in his will of June 23, 1926, presented his said will for probate to the superior court of the State of Washington, for King County, and thereafter said will was duly admitted to probate in Probate Cause No. 40224; that thereafter said community estate of said Charles Schalkenbach and Minnie Wood Schalkenbach was duly administered in said Cause No. 40224, and on the 21st day of November, 1930, a final decree of distribution was duly made and entered by this court, sitting in probate, in said Cause No. 40224, which decree distributed to said Minnie Wood Schalkenbach one half of all the community estate which had theretofore belonged to the community of Charles Schalkenbach and Minnie Wood Schalkenbach; that no appeal has ever been taken from said final decree of distribution.

"That on the 2d day of November, 1928, said Minnie W. Schalkenbach made a last will and testament, which will was filed for probate in the superior court of King County, Washington, and was thereafter admitted to probate in Cause No. 56113 of said court; that by the terms of said last will and testament dated November 2, 1928, said Minnie W. Schalkenbach devised, gave and bequeathed all of her property to certain legatees, among whom are her relatives, friends and certain local charities."

The trial court thereupon made conclusions of law and entered a judgment in accordance with the foregoing findings.

It is to be noted that the findings are very comprehensive and determine every material issue involved in the suit. Where the evidence was conflicting, the trial court resolved it in favor of respondents.

After seeing and hearing the witnesses, it is to be seen that the trial judge gave little or no credence to some of the testimony of appellants and their principal witnesses. In such case, the judgment of the trial court ought not to be and cannot be ignored. *In re Jones' Estate,* 178 Wash. 433, 34 P. (2d) 1111.

Mollie Peirce Moller, one of the residuary legatees, cross-appealed from the judgment; her principal contention being that appellants are entitled to no relief, because the trust under which they acted was at all times invalid.

Nine errors are specified by appellants, which are chiefly concerned with the findings, conclusions and judgment of the trial court and vigorously contesting the determination by the trial court that the contracts of June 23, 1926, were void. The briefs in this case comprise 687 printed pages. The record is immense, and to write an opinion covering in detail all the controverted issues and arguments in this case would require the larger part of a volume, which is impossible to devote to any one case.

It will be unnecessary to go outside of this jurisdiction and review decisions of other courts. This case is controlled by the statute heretofore quoted and by a comparatively few of our own decisions.

I. The trusts attempted to be created by the alleged wills of Charles Schalkenbach and Minnie W. Schalkenbach, deceased, except the direction to pay the survivor the sum of four thousand dollars annually, are invalid.

In *Chellew v. White,* 127 Wash. 382, 221 Pac. 3, this court reviewed cases, some of which reviewed certain English cases, and positively decided that no prerogative right of the Crown to administer charities exists in this state, although the right has been held to exist in some states. We there said:

"We have no statute in this state evidencing any intent on the part of the state to exercise any such prerogative power."

There is no occasion for us to discuss or review the leading English case of *Morice v. The Bishop of Durham,* 9 Ves. Jr. 399, and other cases following it.

Courts of equity in this and other states of this Union generally must be governed by the constitution and statutes in force in them. *Parmeter v. Bourne,* 8 Wash. 45, 35 Pac. 586, 757.

II. The record shows that the superior court for King county, Washington, on November 21, 1930, in the Matter of the Estate of Charles Schalkenbach, Deceased, made and entered a decree of settlement and distribution, which decree adjudged and decreed that Minnie W. Schalkenbach was then the owner of and entitled to the possession of her half of the community of herself and her husband Charles Schalkenbach. No appeal was ever taken from that decree, and ever since the date thereof it has been and now is in full force and effect.

It certainly should be deemed thoroughly well settled by this time that a decree of distribution, such as that above referred to, is a final decree, as much so as a decree in any other proceeding, in a court of equity, or any other court in this state. *In re Ostlund's Estate,* 57 Wash. 359, 106 Pac. 1116, 135 Am. St. 990; *Alaska Banking & Safe Deposit Co. v. Noyes,* 64 Wash. 672, 117 Pac. 492; *Krohn v. Hirsch,* 81 Wash. 222, 142 Pac. 647; *Doble v. State,* 95 Wash. 62, 163 Pac. 37.

In the *Alaska Banking & Safe Deposit Co.* case, *supra,* we took occasion to say:

"It was the purpose of the court in that case to forever set at rest the opinion, prevailing to some extent, that a probate proceeding was something of

less importance than an ordinary civil action, and that a decree formally entered could be questioned by any one although a party, where, as in that as well as in this case, it was thereafter believed to have been entered upon a mistake of fact or an erroneous conception of the law. The remedy of a party in all such cases is by appeal, . . ."

We conclude, therefore, that the decree above described is now *res judicata* of all matters and things involved in this action.

III. The statute heretofore quoted is *sui generis*. There appears to be no statute of like kind in any other state. It has been before us for review heretofore, and, particularly, in *Bloor v. Bloor*, 105 Wash. 110, 177 Pac. 722, where we held that, under the provisions of that statute, the contracts must be made jointly and simultaneously; but here the court found, upon evidence which is competent and substantial, that the contract, including the will of Minnie W. Schalkenbach, was executed by her under duress, compulsion and undue influence on the part of her husband, Charles Schalkenbach.

We are not disposed to disturb that finding, particularly since another statute, Rem. Rev. Stat., § 5828 [P. C. § 1421], provides, in effect, that in all transactions between husband and wife the former must assume the burden of proving good faith whenever his good faith is questioned. *In re Madden's Estate*, 176 Wash. 51, 28 P. (2d) 280. Appellants contend that the above statutory provision is intended to be limited to transactions *inter vivos*. The statute does not contain any such limitation, and we see no reason for placing any upon the statute.

What we have said disposes essentially of all the issues involved herein, including the cross-appeal of respondent Mollie Peirce Moller.

The findings, conclusions and judgment are correct and are affirmed.

MITCHELL and MAIN, JJ., concur.

BLAKE and STEINERT, JJ. (concurring)—We concur in the result solely on the ground that the decree of distribution entered In re Charles Schalkenbach's Estate, is, under the facts disclosed by the record in this case, *res judicata* of the issues here presented.

