[No. 30732. Department Two. April 21, 1949.]

EARL F. TOWNSEND, as Administrator de bonis non, Appellant, v. CHARLES SCHALKENBACH HOME FOR BOYS, INC., et al., Respondents.[1]

[1]Reported in 205 P. (2d) 345.

*Elliott & Lee,* for appellant.

*Matthew Stafford* and *Stewart M. Lombard,* for respondent Charles Schalkenbach Home for Boys, Inc.

*The Attorney General, Harry L. Parr* and *Jane Dowdle, Assistants,* for respondent Attorney General.

SCHWELLENBACH, J.—This is the fourth time that the will of Charles Schalkenbach has been before this court. For a better understanding of the problem now confronting us, we deem it necessary to briefly review the controversies which have heretofore been before the courts.

On June 23, 1926, Charles and Minnie Schalkenbach entered into an agreement to make mutual wills. The wills provided that the bulk of their community property would be placed in trust for the establishment of a municipal bank, or, in the alternative, for the establishment of a home for boys. Paragraph SEVENTH (d), of the husband's will, provided:

"In the event that no city legally qualified to accept the hereinabove mentioned donation accepts the same within

the time hereinabove provided, or in the event that the said fund reverts to my said trustees in accordance with the terms of this instrument, I hereby direct my trustees to establish in the City of Seattle, State of Washington, a home for orphaned or abandoned working boys between the ages of twelve and sixteen years, whom are trying to make their own living. Said home shall be nondenominational and no prejudice or preference shall be shown to race, color, religion or character of employment. I direct my trustees, however, to use care and caution in the selection of boys before their admittance into said home in order to promote and maintain harmony therein. It being an express condition that all boys admitted to the home must be working at least part time, temporary sickness or incapacitation excepted, and be at least partially self-supporting, and that each boy must pay as much as possible for him to pay toward the cost of his board and keep in the home according to the schedule of rates established by the trustees and superintendent.

"For the purpose of establishing said home my said trustees shall purchase, build, or rent within the corporate limits of the City of Seattle, State of Washington, as near to the center of business as may be, a plain comfortable building suitable for such a home, the amount to be invested in such home to be left to the discretion of the trustees. The rest of the corpus of the trust estate shall be invested as hereinabove provided, and the income thereof used to defray the cost of operating and maintaining such home.

"My said trustees shall employ a suitable and efficient superintendent for said home at a salary to be fixed by them. Said superintendent shall employ all servants necessary to efficiently and economically operate and maintain said home and fix their compensation subject to the approval of the trustees. Such superintendent shall, subject to the approval of the trustees, establish rules and regulations for said home. No boy shall be expelled from said home, except upon the order of a majority of the trustees.

"It is my wish and desire that there shall be established within the home, a system of self government by the boys along the lines of the system in vogue in the George Junior Republic at Chino, California.

"Said home shall be maintained in perpetuity and my trustees are directed to select a suitable name therefor. Said trustees shall be without power, except for the pur-

pose of investment, or the enlargement, maintenance or operation of said home, to expend any of the corpus or income of the trust estate for any purpose whatsoever except as herein provided.

"It is my intention to vest in my trustees the widest discretion possible in the selection of a site or building for said home and in the operation and maintenance thereof, subject to the provisions of this instrument."

Charles Schalkenbach died July 4, 1926. His will was probated in King county, and, on November 21, 1930, a final decree of distribution was entered.

On November 2, 1928, Minnie W. Schalkenbach made a new will, by the terms of which she gave all of her property to certain legatees, among whom were her relatives, friends, and local charities, which will, upon her death, was admitted to probate.

On April 22, 1932, after proceedings commenced in King county against the wife, for a construction of the husband's will, a decree was entered holding that the attempt to create a trust for the establishment of a municipal bank was invalid, and holding that the alternative trust, as provided in subparagraph (d) of the SEVENTH paragraph, was valid. No appeal was taken from this decree.

Upon the death of the wife, a suit for specific performance of the contract of June 23, 1926, was instituted by the trustees of the husband's estate against the executors and beneficiaries under the wife's later will. The trial court held that the contract, including the wife's will, was executed by her under duress of the husband, and was of no effect. Upon appeal, that judgment was affirmed. *Reagh v. Dickey,* 183 Wash. 564, 48 P. (2d) 941.

A petition was thereafter presented seeking to have the trust for the boys' home declared invalid, based upon certain language in *Reagh v. Dickey, supra.* This petition was denied, and upon appeal the judgment dismissing the petition and holding the trust for the boys' home to be valid was affirmed. *Reagh v. Schalkenbach,* 185 Wash. 527, 56 P. (2d) 673.

Later, an action was commenced by the trustees against the attorney general, seeking an interpretation of the will. The action was commenced in King county and transferred to Thurston county. The trial court entered a decree (1) permitting the trustees to form a corporation to take over and manage the trust; and (2) holding that the age limitation in the will for "orphaned or abandoned working boys *between the ages of twelve and sixteen years*" (italics ours) referred only to admission of boys to the home; and the age at which they should be discharged was left to the discretion of the trustees. Upon appeal, that judgment was affirmed. *Reagh v. Hamilton,* 194 Wash. 449, 78 P. (2d) 555.

The trustees thereupon, on June 25, 1938, incorporated the Charles Schalkenbach Home for Boys, Inc., and conveyed and transferred all moneys, funds, etc. (approximately $120,000), to the corporation. The corporation then purchased a home near the business center of Seattle and proceeded to carry out the provisions of the trust.

Contacts were made with the department of social security and with the various public and private charities. A superintendent was employed, and boys were admitted to the home. At first, the venture was successful. The boys were happy and co-operative. It appeared that there was real need for such an institution. Later, the project seemed to disintegrate. It is rather difficult to lay a finger on the precise cause of the trouble. The trustees interfered with the operation by the superintendent. Sickness developed in the latter's family, and he lost interest. A new superintendent was employed, and then another. The latter did not have the qualifications required by the state department. The boys became dissatisfied and unruly. Most of them dropped out of the home.

Finally, in June, 1943, when only two boys were left in the home, the corporation, through its trustees, in an action against the attorney general, petitioned the superior court for Thurston county for an order temporarily suspending the operation of the home. The petition related the history of the project, the decline in the number of applicants for admission, the cost of operations, and alleged "that it is

uneconomical and impractical to maintain the home under the conditions hereinabove stated." On July 26, 1943, the court issued an order authorizing the trustees to suspend the operation of the home "for a period of two years from June 16, 1943, or the period that the United States is engaged in the present world war, whichever is shorter." The trustees thereupon sold the real property and placed the proceeds in the trust funds.

In June, 1945, the trustees filed another petition in Thurston county, praying that the suspension of the operation of the home

". . . be continued for an additional period of two years or until the conclusion of the present war with Japan, whichever period is longer, for the reason and on the ground that the conditions which made the order of July 26, 1943, appropriate, continue to exist; that no adequate personnel is available at this time to operate such a home; that no demand or request of any social agency of the state of Washington or any of its subdivisions for the immediate resumption of activity by plaintiff has been made."

An order was issued on September 24, 1945, continuing the suspension "for a period of two years from and after June 16, 1945, or until further order of this court." (It was testified in this action that another petition for a further extension has been presented, to be heard after the final determination of this proceeding.)

The present action was commenced by the plaintiff after he had been appointed administrator *de bonis non* of the consolidated estates of the husband and wife, and an order had been made authorizing the action. The complaint alleges that the alleged trust has wholly failed and is impossible of fulfillment for the following reasons:

"(1) That said alleged trust is impracticable and impossible of performance.

"(2) That the said home or institution described in said alleged trust is contrary to public policy as established by the laws and statutes of the State of Washington.

"(3) That there are no persons eligible for or selected as beneficiaries of said trust.

"(4) That there are available no persons qualified or

suitable to perform the duties of Superintendent of the character of the home or institution defined in said trust provisions.

"(5) That several years experience and effort by said corporation in attempting to carry out the provisions of said trust have demonstrated that the same are impracticable and impossible of performance and that further attempts to carry out and perform the same would be contrary to public policy of the State of Washington and against the interest and welfare of any persons that might be selected as beneficiaries."

The trial court in its decree found that the validity of the trust for the boys' home, the authority of the trustees to incorporate the trust and to exercise their discretion as to the age at which the boys should be discharged, the authority to discontinue operations for two years from June 16, 1943, and the authority to continue the suspension of operations for another two years from June 16, 1945, had all been determined by decrees issued regularly out of the courts of this state and were *res judicata*.

The trial court also found that the trustees had not abandoned the performance of the trust; that the trust is not impossible of fulfillment or performance, nor the administration thereof contrary to the public policy of the state. The action of the plaintiff was dismissed, and the plaintiff appeals.

Appellant urges, in support of his argument for the abandonment of the trust, the renunciation by the trustees of the powers and duties imposed upon them under the will, by their action in forming the corporation, rather than by administering the trust themselves. We agree with the trial court that the matters hereinbefore set forth as having been finally determined by courts of competent jurisdiction, including the above issue, are *res judicata*.

Strictly speaking, this type of charitable trust cannot be terminated because of the abandonment of the purposes of the trust by the trustees. If the trustees refuse or fail to carry out the intention of the creator of the trust, it is the duty of courts of equity to require them to act or to

appoint other trustees in their stead. See *In re Stack's Will*, 217 Wis. 94, 258 N. W. 324, 97 A.L.R. 316.

■ If the purpose of a trust becomes impossible of accomplishment, it is proper to terminate it. 54 Am. Jur. 85, Trusts, § 86. 3 Pomeroy's Equity Jurisprudence (5th ed.) 950, § 991c. In the latter text the author states:

"A trust will be terminated where its purposes become impossible of accomplishment or illegal. And where, by a change in circumstances, not anticipated by the settlor, the continuance of the trust becomes so pecuniarily profitless, expensive, or hopeless as to result in a condition justifying the conclusion that the purposes of the trust are impossible of accomplishment, it may properly be terminated by an equity decree. A termination will not, however, be decreed where such action will defeat the intention of the settlor and deprive remote beneficiaries of their interests under the trust. Nor will a termination be decreed unless it appears that the purposes of the trust are impossible of accomplishment. That investments may have to be changed to accomplish the purposes of the settlor does not justify the conclusion that the trust must be terminated."

■ In support of appellant's contention, it is urged that the continued operation of the home, under the limitations imposed by the will, is against the public policy of the state of Washington. Testimony was given by several social workers to the effect that the present social security program, by giving to children in need, has discouraged parttime work, and has assumed the economic responsibility for the children. We agree that the plan of Mr. Schalkenbach to require the boys to work part time and to pay as much as possible toward the cost of their board, is rather reminiscent of the "horse and buggy days," and out of step with the modern trend. But we do not believe that society has so far advanced that frugality and self-support can be said to be against the public policy of the state. We believe that such a plan would help to build character and make better citizens.

Nevertheless, in approaching the problem now before us, we believe that we are limited to the trust as created by Mr. Schalkenbach, and, although we have heretofore

sustained the validity of the trust, we must recognize the fact that his first objective was the establishment of a municipal bank, and that the provision for a home for boys was placed in the will as an alternative to be exercised only in the event that the trust for the establishment of the municipal bank should be declared invalid. See *Reagh v. Dickey, supra.*

■ This is not a situation where the *cy pres* doctrine could be applied. The doctrine does not mean that some kind of a charitable trust will be enforced every time the testator expresses a charitable intent. The settlor must have had a broad, general intent to aid charity as a whole, or some particular class of charitable objects. His intent must not be narrow and particular. Conditions may be such that to carry out any other than the settlor's plans would be obviously unjust and contrary to the settlor's wishes. Courts should not make new wills for testators. Bogert on Trusts, (2d ed.) 301. Here, the testator did not evince a broad, general charitable intent, but limited his charity to a particular kind of a home for orphaned or abandoned working boys.

■ Without recounting the evidence, we are of the opinion that there was sufficient testimony to warrant the findings of the trial court that the trustees have not abandoned the performance of the trust; that the trust is not impossible of fulfillment or performance; that the administration of the trust is not contrary to the public policy of the state; that there are persons eligible as beneficiaries of the trust; that the operation of the home has not demonstrated that the trust is impracticable or impossible of performance. Such findings will not be disturbed on appeal. *Wade v. Bartek,* 30 Wn. (2d) 483, 191 P. (2d) 701.

Nevertheless, we must face this situation realistically. The home was operated from May, 1939, to June, 1943. It was then, by order of court, closed for a period of two years, and the building sold. In June, 1945, the cessation of operation was extended for an additional two years. The war with Japan ended August 14, 1945. The conditions which warranted the issuance of the orders permitting the

cessation of operations do not now exist. The trustees should not be permitted to "sit on the lid" indefinitely. The continued cessation of operation is quite persuasive that the trust is impossible of performance.

The judgment is modified, neither party to recover costs. The cause is remanded to the trial court with directions to dismiss appellant's complaint, if, by January 1, 1950, the trust is being administered under the provisions of subparagraph (d) of the SEVENTH paragraph of the testator's will, as interpreted by this court in *Reagh v. Hamilton, supra*; and, if it is not then being so administered, to declare the trust terminated and grant the prayer of appellant's complaint.

JEFFERS, C. J., SIMPSON, HILL, and GRADY, JJ., concur.

---

May 18, 1949. Petition for rehearing denied.