77 P.3d 1208 (2003)
Joyce NIEMANN, Appellant,
v.
VAUGHN COMMUNITY CHURCH, a Washington non-profit corporation, Respondent.
No. 29049-9-II.
Court of Appeals of Washington, Division 2.
October 21, 2003.
*1209 Thomas Francis Peterson, Betts, Patterson & Mines PS, Seattle, WA, Craig A. Robertson, Robertson & Associates, Gainesville, FL, for Respondent.
Douglas Vincent Alling, Attorney at Law, Michael E. Mcaleenan, Attorney at Law, Tacoma, WA, for Appellant.
BRIDGEWATER, J.
Vaughn Community Church (VCC) has an existing church building and would like to sell it to construct a larger, more modern church nearby; but the trust controlling the property appears to prohibit the sale. When Joyce Niemann sought to enforce the trust language, VCC sought equitable remedies to enable the sale. Niemann appeals the trial court's ruling that the language in the deed that VCC is to "Hold said property for the perpetual use of the Protestant Evangelical Churches of the Community of Vaughn, Washington" is an unreasonable and discriminatory restraint on alienation and void under RCW 49.60.224. Exhibit 10. Further, Niemann contests the trial court's use of the doctrine of cy pres and equitable deviation to reform the language of the trust in accordance with the intent of the donor to permit the sale of the existing church to build the new church within some four to five miles of the existing church. We affirm.

FACTS
VCC owns the property on which its church building sits. The church building is about 100 years old and currently has a 185-seat sanctuary, some offices and classrooms, a foyer, and a fellowship hall. It was last remodeled in the 1970-80s. In relevant part, VCC's deed reads as follows:
WHEREAS, on April 5, 1949, the Board of Trustees of the [Emmanuel Congregational Church of Vaughn] met in regular session and passed a resolution ... as follows, resolved that
"The Emmanuel Congregational Church of Vaughn transfer (the) church property to the Vaughn Community Church of Christ, with the stipulation that said property shall forever remain for the *1210 perpetual use of Protestant Evangelical Churches of the Community of Vaughn",
....
NOW, THEREFORE, in consideration of the premises [Emmanuel] does, by these presents, convey and quit claim to [VCC] all its interest in the following described real estate ... to-wit:
[Legal description of property]
TO HAVE AND TO HOLD said property for the perpetual use of Protestant Evangelical Churches of the Community of Vaughn, Washington.
Dated this 22nd day of February, 1956.
Exhibit 10.
That deed reflects the history that the two churches joined in 1949, but the new entity did not actually need legal title until 1956. At that time, VCC sought a bank loan to remodel the church because its congregation was expanding. In the 1960s and 1970s, VCC's congregation expanded, and another remodeling took place that lasted into the 1980s.
In 1991, VCC commissioned a feasibility study to explore options for expanding capacity at the site. The final report found the existing building inadequate and difficult to remodel further. In the late 1990s, the congregation held informational meetings to explore options for accommodating growth and, in March 1999, the overwhelming majority of those present at the congregational meeting voted in favor of selling the church facility. Their efforts to sell the property to another evangelical church were unsuccessful.
VCC would now like to sell the property on the open market and build new facilities that would be a 5- to 15-minute drive from the current location, some 4.3 miles away. One example of the proposed new facilities showed a 450-seat sanctuary; a multiuse facility (a gym, some offices, and "day care, preschool, elementary school, middle school, high school, and feeding ministries"); and a skill center (teaching car repair and cooking). Niemann, a long-time VCC member, sought to enjoin the sale by enforcing the deed language.
The trial court found that VCC holds the property "in a charitable trust in accordance with the deed." Clerk's Papers at 363. VCC is the trust's primary beneficiary but not the only one. And Niemann has standing to enforce it.

I. RCW 49.60.224
On its face, RCW 49.60.224 invalidates restrictions like the one here. In relevant part, that statute states: "Every provision in a written instrument relating to real property which purports to forbid or restrict the conveyance... thereof to individuals of a specified... creed ... is void." RCW 49.60.224.[1] The deed containing the language at issue is a written instrument, relates to real property, and seems to filter sales by creed by forbidding sale to anyone other than "Protestant Evangelical Churches of the Community of Vaughn." Exhibit 10.
Niemann presents constitutional challenges and statutory interpretation questions. We review her challenges, both questions of law, de novo. Isla Verde Int'l Holdings, Inc. v. City of Camas, 146 Wash.2d 740, 751, 49 P.3d 867 (2002); Shoop v. Kittitas County, 149 Wash.2d 29, 33, 65 P.3d 1194 (2003).

*1211 A. Burden on Freedom of Religion
Niemann first asserts that article I, section 11 of the Washington Constitution and the First Amendment to the United States Constitution protect "a charitable gift of property by a church to the Protestant Evangelical Churches of a particular community." Br. of Appellant at 40. However, VCC properly points out that while Niemann has standing as someone with a special interest in the enforcement of the trust, this issue deals with the gift-giver's rights. While a successful claim here might have the effect of enforcing the trust, that does not enable her to assert the trust settlor's constitutional right to freedom of religion regarding restraining the future sale of the property.
Niemann finds personal harm in the court's allowance of a possible move of her church outside of her community: she asserts that it will chill her right to "freely exercise her religion ... within the comfort of the community set up by the original granting language." Reply Br. of Appellant at 23-24. Niemann cites no authority for the proposition that she has a right to expect her church to stay in one place and not move a few miles away. Even assuming such an attenuated harm is recognizable here, Niemann's claim still fails.
To show an unconstitutional burden on freedom of religion, Niemann must show a coercive effect in the practice of her religion. First Covenant Church of Seattle v. City of Seattle, 120 Wash.2d 203, 218, 840 P.2d 174 (1992). After that showing, the court subjects the statute to strict scrutiny: there must be a compelling State interest, enabled by the least restrictive means. First Covenant Church of Seattle, 120 Wash.2d at 218, 840 P.2d 174.[2] The means chosen here, invalidating specific discriminatory restraints on alienation, are narrowly tailored to the stated goal of removing discriminatory land sales and appear to go no further. Thus, RCW 49.60.224 passes constitutional muster as not being a burden on freedom of religion.

B. 14th Amendment Equal Protection
Niemann also assigns error to the trial court's finding that principals of equal protection prohibit a court from enforcing a discriminatory restraint on alienation. Niemann argues that there is no right to be a beneficiary of a trust; thus, there can be no equal protection conflict in enforcing religiously discriminatory trusts. She contends that because the benefits run to worshipers and the service is not offered to the public at large, there should be no standing to complain of exclusion from a non-public service. Even if the church services were private, Niemann misses the point. VCC wants to sell the property, not substitute another beneficiary. That is, the discrimination would be against real estate purchasers, not would-be trust beneficiaries.
Niemann responds that VCC does not have standing here. VCC raised equal protection as an additional means of voiding the discriminatory restraint on alienation. See Br. of Resp't at 37 (citing Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948)). While VCC may assert a lack of buyers qualified under the deed language, VCC has not asserted any problem with VCC's equal protection under the law. However, though VCC does not have standing here, the equal protection argument is in addition to, and separate from, the application of RCW 49.60.224. So, the equal protection argument is superfluous and its removal does not weaken the judgment below.

C. Deed Predates Statute
Niemann argues that the statute, enacted in 1969, should not modify the 1956 deed because statutes typically proscribe only future behavior, especially where contract obligations are involved. But, a more complete statement of the rule reads: "The presumption is that a statute will only apply prospectively, unless (1) there is legislative intent to apply the law retroactively, or (2) the statute is remedial and retroactive application would further its remedial purpose." *1212 City of Ferndale v. Friberg, 107 Wash.2d 602, 605, 732 P.2d 143 (1987).
Chapter 49.60 RCW is a remedial statute. Bennett v. Hardy, 113 Wash.2d 912, 927, 784 P.2d 1258 (1990). Moreover, by its terms, it specifically applies to preexisting written instruments. RCW 49.60.227 (gives courts in rem jurisdiction to strike terms prohibited by RCW 49.60.224 upon proof by an owner or occupant). Thus, Niemann's timing argument lacks merit.

D. "Individual"
Niemann apparently concedes that RCW 49.60.224 prohibits restricting the sale of land to people of one faith or church. Riste v. E. Wash. Bible Camp, Inc., 25 Wash.App. 299, 605 P.2d 1294 (1980) (RCW 49.60.224 held to invalidate term restricting sales to people who "conduct themselves [in conformity with] the general practises [sic] and principles" of a certain church). Riste, 25 Wash.App. at 300, 605 P.2d 1294. But she contends that a Protestant evangelical church is not an "individual" under RCW 49.60.227. This argument is meritless.
The phrase at issue here says that the property shall forever remain "for the perpetual use of the Protestant Evangelical Churches of the Community of Vaughn." Exhibit 10. Niemann contends that because VCC's deed language limits sale to certain churches, the limitation falls outside the relevant statutory definition of an individual and out of the statute. The statute does not define "individual," and Riste is not necessarily on point because it dealt with sales to people. Riste, 25 Wash.App. at 300, 605 P.2d 1294.
The statute does, however, define "person," and that definition includes an individual and would include a church by its language of "one or more individuals" or "any group of persons."[3] Further, chapter 49.60 RCW uses "individual" consistently as a natural human being and "person" as either a human or a legal entity, like a corporation. See RCW 49.60.172 ("No person may require an individual to take an HIV test ... as a condition of hiring, promotion, or continued employment ....") (emphasis added).
VCC counters that the deed also impermissibly limits sales to other protected people who are not evangelical Protestants. That is, the statute invalidates terms that either exclude benefits from a protected class or terms that limit benefits to an identified class: specifically, an invalid term is one that "purports to forbid or restrict the conveyance...." RCW 49.60.224 (emphasis added). The "individual" here is someone who is excluded from buying the land.[4] VCC persuasively concludes that the deed language forbids sale to many different people, even many who fall within the classes protected by RCW 49.60.224; therefore, the statute applies and mandates that the restrictive deed language shall be void.

E. Policy and Consequence of Voiding Religious-Only Uses
Niemann argues, without authority or persuasive support, that public policy weighs against applying the antidiscrimination law to church property or to charitable trusts. That argument is unmeritorious because it does not matter who is discriminating: the effect is the same. Niemann then cites to other jurisdictions that have purportedly upheld trusts that discriminate based upon religious grounds. Some of the cited cases are from states that have specific statutory exemptions allowing religiously based restraints on real property alienation. See Catholic Bishop of Chicago v. Murr, 3 Ill.2d 107, 120 N.E.2d 4 (1954) (New Jersey Statute 46:3-23). Some were decided on other *1213 grounds. See Averill v. Lewis, 106 Conn. 582, 138 A. 815, 819 (1927) ("purely an administrative matter, adjudicating no rights"). Some dealt with non-property or non-religious matters. In re Matter of Cram's Will, 186 Mont. 37, 606 P.2d 145 (1980) (trust giving monetary assistance to boys in 4H and Future Farmers of America). None are applicable here.
Niemann emphasizes the consequence of holding that RCW 49.60.224 applies to VCC's (i.e., a church's) property. Niemann notes that the only Washington case invalidating a religious limitation on alienation ended with the following statement: "Nothing in this opinion is to be construed as limiting the right of religious organizations to operate and maintain their own bible camps or church property, access to which is limited to those of the same persuasion." Riste, 25 Wash.App. at 303, 605 P.2d 1294. Niemann is apparently citing that statement in support of the contention that RCW 49.60.224 conflicts with a religious group's freedom of association.
The second clause of the statute at issue here commands that "every condition... [that] directly or indirectly limits the use or occupancy of real property on the basis of... creed ... is void." RCW 49.60.224. This is not at issue, and it appears severable. Thus, the "no sale" clause of the statute remains in force whether or not this phrase is void. McGowan v. State, 148 Wash.2d 278, 294, 60 P.3d 67 (2002).
Altogether, the trial court properly removed the discriminatory restraint on alienation from VCC's deed. The trial court did not err in making its conclusions regarding the application of RCW 49.60.224 to the charitable trust and that VCC may sell the subject property to any person or entity without regard to the restrictions in the deed.

II. Equitable Relief: Cy Pres and Equitable Deviation
Niemann next appeals the grant of equitable relief to VCC. In allowing the sale of the current property, the trial court invoked both cy pres and equitable deviation, which are separate but similar remedies.
Because of the trial court's "broad discretionary power to fashion equitable remedies," we review these decisions for abuse of discretion. SAC Downtown Ltd. P'ship v. Kahn, 123 Wash.2d 197, 204, 867 P.2d 605 (1994). We review the trial court's factual findings for substantial evidence, where those findings are challenged. N. Fiorito Co. v. State, 69 Wash.2d 616, 618-19, 419 P.2d 586 (1966). Substantial evidence exists where the record reflects "evidence in sufficient quantum to persuade a fair-minded, rational person of the truth of a declared premise." Helman v. Sacred Heart Hosp., 62 Wash.2d 136, 147, 381 P.2d 605 (1963).

A. VCC Trust Parties, Powers, and Intent
On partial summary judgment, the trial court found that VCC holds the property in charitable trust. Thus, the first step in analyzing the remedy is identifying the parties to the trust, their powers, and the controlling intent.
As the deed grantor, Emmanuel is the trust settlor. Because VCC "holds" the property, it is the trustee. RESTATEMENT (SECOND) OF TRUSTS § 3(3) (1959). As trustee, VCC has only those powers articulated in the trust or, if not forbidden, are necessary to carry out the trust's purposes. RESTATEMENT (SECOND) OF TRUSTS at § 380 (1959). For example, for the trustee to sell the trust property, the trust must specifically grant the power of sale, or the sale must be necessary or appropriate to the trust administration. RESTATEMENT (SECOND) OF TRUSTS at § 190 (1959). While the court held that VCC is the primary beneficiary, it also held that it is not the only beneficiary. In a charitable trust, "the beneficial interest is not given to individual beneficiaries, but the property is devoted to the accomplishment of purposes beneficial to the community." RESTATEMENT (SECOND) OF TRUSTS § 364 cmt a (1959). Thus, a more precise statement is that VCC may benefit, but the community of Vaughn is the class of beneficiaries.
The court found that the intent of the donors was involved in VCC's outgrowth from a previous church. Thus, those who began the process of transitioning churches, anticipated that the trust was established to *1214 convey title to VCC and remove the then-dissolved church from the title, to enable it to remodel and expand, and to acknowledge VCC's success and its concomitant responsibilities and obligations to the church property.
Several other findings are relevant to our inquiry. Because neither party has appealed the following relevant findings, they are verities on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 808, 828 P.2d 549 (1992).
25. Allowing VCC to expand to meet the goals of a modern evangelical church is consistent with sound administration of the trust corpus ... [and] the goal of an evangelical ministry is to spread the gospel at home and more broadly.
26.... growth is an essential and necessary part of a successful evangelical church ... [and it is] one of the obligations placed upon an evangelical Christian church.
27.... the trustee, VCC, and its congregation, have determined that it is impracticable to effect the purpose of the Trust ....
CP at 411. The Vaughn community is not defined geographically, is not incorporated, and is centrally located on the Key Peninsula. VCC has drawn its members from all over the Key Peninsula, which has experienced an increased population.
The controlling intent, though, is found in the deed as well as the testimony of Richard Koger and Harmon Van Slyke, Jr., both signatories to the deed. Koger testified that the intent was "to transfer the property for the perpetual use of propagation of the gospel," not to create some kind of caretakers, and felt that there were no restrictions on the sale. Dep. of Richard Koger at 28. Van Slyke agreed that the intent was not to hinder the church growth, but to promote "the availability of a Protestant evangelical church for the community of Vaughn." 3 Report of Proceedings (RP) (Apr. 18, 2002) at 254.[5] That fulfills the substantial evidence necessary to support the trial court's finding that the donors' dominant intent was to benefit the new church, VCC, and to provide for its "success, growth, and endurance as a church, in ministering and spreading the gospel to the evangelical Protestants of the Vaughn community," regardless of where the ministries were specifically located. CP at 409.

B. Elements of Cy Pres and Equitable Deviation
Cy pres and equitable deviation both work to skirt the literal application of charitable trust language. Equitable deviation allows a
trustee of a charitable trust to deviate from a term of the trust if ... compliance is impossible or illegal, or that owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust.
RESTATEMENT (SECOND) OF TRUSTS § 381 (1959); see also In re Booker, 37 Wash.App. 708, 715-16, 682 P.2d 320 (applying § 381 concepts to reduce the size of an intended rest home), review denied, 102 Wash.2d 1010 (1984). Regarding the unknown and unanticipated, *1215 there is evidence that circumstances here have changed. There are greater parking needs, and churches generally provide more services than they did 50 years ago.
As for impossibility, VCC does not contend that it is impossible to use for church purposes. VCC asserted only that the discriminatory restriction is illegal. But, nothing requires VCC to sell, and the court resolved the RCW 49.60.224 illegality. Thus, the remaining element for equitable deviation becomes "impracticable": do previously unknown and unanticipated circumstances defeat or substantially impair the trust's purposes. See RESTATEMENT (SECOND) OF TRUSTS at § 381 cmt. d-e (allowing forbidden sale of land). If so, the court may allow a shift in the administration of the trust. RESTATEMENT (SECOND) OF TRUSTS at § 381 cmt. a.
Cy pres applies to charitable trusts, as well:
If ... it is or becomes ... impracticable... to carry out the [intended] purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor.
RESTATEMENT (SECOND) OF TRUSTS § 399 (1959). Cy pres, then, does not require an unanticipated change of circumstances but does require a broad, general charitable intent such that the court may shift the application of the trust within the overall intent. See RESTATEMENT (SECOND) OF TRUSTS at § 399 cmt. p (allowing forbidden sale of land). A broad charitable intent, for example, is the desire to help unwed mothers. Puget Sound Nat'l Bank v. Easterday, 56 Wash.2d 937, 949-51, 350 P.2d 444 (1960). A narrow and particular intent, for example, is to establish a home for orphaned working boys between 12 and 16, managed by self-government; or, to give money to a university. Townsend v. Charles Schalkenbach Home for Boys, 33 Wash.2d 255, 263, 205 P.2d 345 (1949); Horton v. Board of Educ. of Methodist Protestant Church, 32 Wash.2d 99, 114-15, 201 P.2d 163 (1948). We explore the settlor's intent, whether "broad or narrow," below.

C. Impracticable
The trial court made findings that it is impracticable for VCC to carry out its obligations under the terms of the trust. Those findings are based on, among other things, VCC's architect, who specializes in church design, who testified that the current property and building are insufficient for VCC's ministry. That is, based on the number of seats in the sanctuary, the land and buildings are too small, and there is not enough parking. There are also inadequate restrooms.
Their expert also opined that VCC could not attract a larger congregation because it was already above the typical maximum of 80 percent seating. Many witnesses testified about the importance of growth, VCC's Pastor Odegaard went so far as to say that bringing in new people and growing the size of the church is a basic requirement of the church. To accommodate a higher attendance, VCC tried doing two services per Sunday but chose to return to one. Odegaard also testified that he believes that building a new skill center is part of VCC's mission as an evangelical church.
There was also testimony that VCC's weekday preschool is either full or exceeding capacity, with no space for additional classrooms. The hallways in the church are inadequate under the current codes. The space for youth meetings is inappropriate for active games and other high-energy activities. The foyer is inadequate in relation to the size of the sanctuary. There are minimal facilities for handicapped access. And the church lacks adequate space for storage, its music ministry, and administrative offices.
These facts constitute substantial evidence to support Findings of Fact 28-30, which form the basis for the conclusion that continued use of the property is impracticable. Under our test, we do not weigh evidence, nor determine credibility; our job is to ensure that there is substantial evidence upon which the trial court could make its determination. When we couple those findings with the uncontested findings (i.e., that growth is essential, expansion is consistent with the *1216 trust, and service to the evangelicals on the Key Peninsula can occur at the new location), the use of the current location is clearly "impracticable" for expansion, growth, and furtherance of the trust.

D. Beneficiary Class; Broad or Narrow Intent
As shown above, the deed stated, and the court found, that the settlor intended the trust to endure in perpetuity to minister to Protestant evangelicals of the Vaughn community. Niemann apparently argues that, therefore, the proper beneficiary class is limited to the Vaughn community. That would be important not only in relation to fulfilling the exact terms of the trust, but it also limits the available remedies: equitable deviation changes only the administration of the trust, and VCC must go to cy pres for expansion of trust beneficiary class. See RESTATEMENT (SECOND) OF TRUSTS § 381 cmt. a; In re Oshkosh Found., 61 Wis.2d 432, 440, 213 N.W.2d 54, 58-59 (1973) (expansion of trust benefits beyond city limits denied as deviation improper and trust not impracticable for cy pres). VCC's proposed growth does implicate a growth in the trust's existing and historical beneficiary class. VCC proposes a move, more than doubling the size of their sanctuary, and providing many services they currently do not.
In the end, the dispositive question is the scope of the settlor's intent. If the settlor had a broad intent, desiring the trust to benefit a wide group, then the current site is impracticable. In that case, cy pres is appropriate because the new site and facilities would stay within the original intent. Also, if the grantor anticipated a larger beneficiary class, equitable deviation lies because restricting the sale of the current church property would defeat or substantially impair the purposes of the trustto expand the evangelical ministry. Based on the findings that expansion and growth are essential values of an evangelical ministry, the trial court did not err in concluding that the grantors had a broad, general charitable intent and that cy pres and equitable deviation are applicable.
The trial court made a thoughtful and careful decision providing for the sale of the property in accord with the trust grantor's intent. The trial court did not err in entering the challenged findings, and the findings support the challenged conclusions as to the intent of the trust and the application of cy pres and equitable deviation doctrines.
Affirmed.
I concur: HOUGHTON, P.J.
ARMSTRONG, J. (Dissenting).
Because the trial court erred in ruling that RCW 49.60.224 prevents this kind of charitable gift to a church and also erred in applying equitable principles to effectively dissolve the trust, I dissent.
The trial court ruled that the trust provisions of the deed violate RCW 49.60.224, apparently reasoning that the perpetual gift language was intended as a discriminatory restriction on transfer of the property to "individuals of a specified ... creed." RCW 49.60.224. The court, accordingly, struck the deed language that VCC held the property "for the perpetual use of Protestant Evangelical Churches of the Community of Vaughn." Exhibit 1. This language, however, does not restrict transfer on the basis of creed. Rather, the language creates a perpetual gift to a group of churches in the Vaughn community. Thus, the language prevents any transfer that deprives the church group of the perpetual use of the property. And this would include a transfer to any protestant evangelical church outside the Vaughn community. Because the deed language prevents any transfer of the property, it does not discriminate against persons who do not share the protestant evangelical creed. For the same reasons, this charitable gift in perpetuity does not violate the principles of Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), as the trial court ruled.
Moreover, if we read RCW 49.60.224 to prevent this kind of gift, no parishioner can make a gift of real property in perpetuity to a church of his or her choosing because, according to the trial court and majority, any real property gift to a particular church discriminates against other churches and non-believers. RCW 49.60.224 was never intended *1217 to so restrict a parishioner's right to support his or her church.[6]
I also disagree with the majority that RCW 49.60.224 applies retroactively. We presume that statutes operate prospectively. Bayless v. Cmty. Coll. Dist. No. XIX, 84 Wash.App. 309, 312, 927 P.2d 254 (1996). Statutes can operate retroactively if they are remedial and retroactive application would further the remedial purpose. Bayless, 84 Wash.App. at 312, 927 P.2d 254. A statute is remedial if it relates to "practice, procedure or remedies, and does not affect a substantive or vested right." Bayless, 84 Wash.App. at 312, 927 P.2d 254 (quoting In re F.D. Processing, Inc., 119 Wash.2d 452, 462-63, 832 P.2d 1303 (1992)). Here, the statute deals with substantive rights, not practice or procedure. RCW 49.60.224 does not apply retroactively to this deed.
Finally, I disagree with the trial court's cy pres and equitable deviation analysis. In essence, the trial court found that the trust property was no longer suitable for VCC because it was not large enough to meet the congregation's expansion goals. The court then found that the grantor, Emmanuel Congregational Church of Vaughn, had a general charitable intent to benefit evangelical protestant churches and that allowing VCC to sell the property and move to a larger location would fit within the grantor's general intent.
But the court never found the trust purpose impossible to fulfill. Indeed, the court could not find impossibility because the trust property has been used by one congregation or another for a hundred years. And VCC continues to use it for worship services. Further, the trust provision requires only that the property be used by the protestant evangelical churches of Vaughn. It does not state that the use must be limited to worship services. VCC has not shown that the property is impracticable for use as a children's camp, retreat facility, or its current use as a worship facility of limited size. In short, VCC has shown only that the property does not fit into their plans to expand. It has not shown that the property can not be used in some meaningful way by the protestant evangelical churches of the community of Vaughn.[7]
More importantly, the trial court misapplied both cy pres and equitable deviation. Cy pres allows the court to alter a trust if the trust purpose becomes impossible, impracticable, or illegal to carry out. RESTATEMENT (SECOND) OF TRUSTS § 399 (1959); Puget Sound Nat'l Bank of Tacoma v. Easterday, 56 Wash.2d 937, 350 P.2d 444 (1960). Thus, if the court finds the purpose impracticable or impossible and that the settlor evidenced a general charitable intent, "the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor." (Emphasis added.) RESTATEMENT (SECOND) OF TRUSTS § 399 (1959). Cy pres does not authorize the court to terminate a trust.
Similarly, equitable deviation allows the trustee to "deviate from a term of the trust if... compliance is impossible or illegal, or ... compliance would defeat or substantially impair the accomplishment of the purposes of *1218 the trust." RESTATEMENT (SECOND) OF TRUSTS § 381 (1959) (emphasis added); In re Matter of Booker, 37 Wash.App. 708, 714-15, 682 P.2d 320 (1984). Equitable deviation also does not authorize the court to terminate a trust.
And although the trial court purported to continue the trust by concluding that VCC must use the sale proceeds to provide a new church to serve the protestant evangelicals of Vaughn, it lacked the power to do so. The trust arose only because of the restrictive language in the deed. Once the court ruled that the language was void and struck it, the trust ceased to exist. Indeed, the trust never existed because the restrictive language was void, according to the trial court's reasoning, when the old congregation deeded the property to VCC in 1956. The court explains neither the basis of this new trust nor its terms. Assuming that VCC remains as trustee, what obligations does it have? And what rights do other protestant evangelical churches of Vaughn have in the new facility? Is VCC free to sell the new facility to any congregation or only protestant evangelical churches of Key Peninsula? If not, how does this court-ordered restraint escape the provisions of RCW 49.60.224? This new trust is clearly a legal impossibility. Absent the deed's trust language, VCC takes both the legal and beneficial ownership of the property without restriction. And without the trust language, the court had no authority or power to impose a trust on the sale proceeds.
The court may terminate a trust if its purpose becomes impossible to accomplish. Townsend v. Charles Schalkenbach Home for Boys, 33 Wash.2d 255, 262-64, 205 P.2d 345 (1949); 54 Am.Jur. 85, Trusts, § 86; 3 POMEROY'S EQUITY JURISPRUDENCE, 5th ed., 950, § 991c. The court may also terminate if the trust purpose becomes illegal. 3 POMEROY'S EQUITY JURISPRUDENCE, 5th ed., 950, § 991c. But the court may not terminate a trust if the decree "will defeat the intention of the settlor and deprive remote beneficiaries of their interests under the trust." 3 POMEROY'S EQUITY JURISPRUDENCE, 5th ed., 950, § 991c.
Here, the trial court defeated the settlor's intent to preserve the property for the perpetual use of protestant evangelical churches in Vaughn. The court also deprived the other Vaughn churchesremote beneficiaries of their interests.
NOTES
[1] RCW 49.60.224 states:

(1) Every provision in a written instrument relating to real property which purports to forbid or restrict the conveyance, encumbrance, occupancy, or lease thereof to individuals of a specified race, creed, color, sex, national origin, families with children status, or with any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a blind, deaf, or physically disabled person, and every condition, restriction, or prohibition, including a right of entry or possibility of reverter, which directly or indirectly limits the use or occupancy of real property on the basis of race, creed, color, sex, national origin, families with children status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a blind, deaf, or physically disabled person is void.
(2) It is unfair practice to insert in a written instrument relating to real property a provision that is void under this section or to honor or attempt to honor such a provision in the chain of title.
[2] We see no burden on Niemann's exercise; but, assuming such a burden, the State has a compelling interest in eradicating discriminatory property ownership. See RCW 49.60.010 (purpose and public policy statement that such discrimination "threatens ... rights and proper privileges [and] menaces the institutions and foundation of a free democratic state").
[3] RCW 49.60.040(1) states:

"Person" includes one or more individuals, partnerships, associations, organizations, corporations, cooperatives, legal representatives, trustees and receivers, or any group of persons; it includes any owner, lessee, proprietor, manager, agent, or employee, whether one or more natural persons; and further includes any political or civil subdivisions of the state and any agency or instrumentality of the state or of any political or civil subdivision thereof.
[4] Though the harm here is to a possible, future, and unidentified buyer, VCC has standing to seek relief. The statute specifically allows landowners to institute an action to remove language from public records (like recorded deeds) that RCW 49.60.224 has declared void. RCW 49.60.227.
[5] Based on this testimony and the deed, the trial court made factual findings 15 and 16:

15. First and foremost was the Grantors' dominant intent to benefit the new church (VCC), created at the urging and request of the younger generation of church-going Vaughn residents (as was more fully explained above). Specifically, they wanted to ensure VCC's success, growth, and endurance as a church, in ministering and spreading the gospel to the evangelical Protestants of the Vaughn community.
16. The primary aspect of this purpose was to assist and ensure the continuation of the Protestant evangelical ministries of the Vaughn community through VCC, regardless of where they were specifically located and regardless of the name of that church, knowing as they did from very recent experience that the work of the Protestant evangelical ministry took place under different church names and in different churches, in different parts of the community, i.e., as ECC [Emmanuel] and the Christian Church had themselves been in different buildings and in different locations during their co-existence prior to the merger. They wanted to be sure that there was a place within the Vaughn community where Protestant evangelical ministry could exist. To see that ministry carried on, this Court finds, was an abiding purpose for this deed.
CP at 409-10.
[6] Niemann argues that her First Amendment freedom of religion rights are infringed by the trial court's ruling. Because I would hold that RCW 49.60.224 does not apply, I do not address these concerns. The majority dismisses Niemann's claim, reasoning that merely moving the church will not affect her right to worship as she pleases. The problem is more fundamental. If the State can restrict a church's means of support, it can restrict the church's activities or even destroy the church. I agree with Justice Burger's comment that: "I doubt that the Court would tolerate for an instant a limitation on contributions to a church or other religious cause; however grave an `evil' Congress thought the limits would cure.... To limit either contributions or expenditures as to churches would plainly restrict the free exercise' of religion." Buckley v. Valeo, 424 U.S. 1, 256, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976)

(dissent).
[7] The current congregation bolstered its impracticability argument by explaining its unsuccessful attempts to sell the property to other churches, apparently unaware that the property was not its to sell. In any event, the church's inability to sell the property is not persuasive. The question is whether either the present congregation or another beneficiary can make some meaningful use of the property. And the current congregation has no right as trustee to require other beneficiaries to buy the property in order to use it.