157 P.3d 888 (2007)
Ralph A. RIDDELL, Trustee of the George X. Riddell and Irene A. Riddell Testamentary Trust and The Geroge X. Riddell Life Insurance Trust, Petitioner.
No. 34869-1-II.
Court of Appeals of Washington, Division 2.
May 8, 2007.
*889 Eileen Margaret Schock, Attorney at Law, Bremerton, WA, for Petitioner.
PENOYAR, J.
¶ 1 The Trustee of a consolidated trust, Ralph A. Riddell,[1] appeals the trial court's denial of his motion to modify the trust and create a special needs trust on behalf of a trust beneficiary, his daughter, Nancy I. Dexter, who suffers from schizophrenia affective disorder and bipolar disorder. Ralph's deceased father and mother each established a trust. The trusts were consolidated by the court. Upon Ralph's death, the trust will terminate and Nancy will receive payment of her portion of the trust proceeds. Ralph argues that the trial court has the power to modify the trust; that his daughter's disabilities are a changed and unanticipated condition; and that the purpose of the settlor will be preserved through the modification. We agree and remand to the trial court to reconsider an equitable deviation in light of changed circumstances and the settlors' intent that the beneficiaries receive both medical care and general support from the trust's funds.

FACTS
¶ 2 George X. Riddell and Irene A. Riddell were husband and wife with one child, Ralph. George's Last Will and Testament left the residue of his estate in trust for the benefit of his wife, his son, his daughter-in-law, and his grandchildren. George also created an additional trust (the Life Insurance Trust) for their benefit. Irene's Last Will and Testament left the residue of her estate in trust for the benefit of her son; her son's wife, Beverly Riddell; and her grandchildren.
¶ 3 The trusts contained a provision in which, upon the death of Ralph and Beverly, George and Irene's grandchildren would receive the trust's benefits until the age of thirty-five when the trusts would terminate and the trustee would distribute the principal *890 to the grandchildren. Ralph is currently the Trustee. George and Irene are both deceased.
¶ 4 Ralph and Beverly have two children, Donald H. Riddell and Nancy. Both Donald and Nancy are more than thirty-five years old. Donald is a practicing attorney and able to handle his own financial affairs. Nancy suffers from schizophrenia affective disorder and bipolar disorder; by 1991 she received extensive outpatient care; and by 1997 she moved to Western State Hospital. She is not expected to live independently for the remainder of her life.
¶ 5 Both Ralph and Beverly are still living. Upon their death, the trusts will terminate because Nancy and Donald are both over the age of thirty-five; Nancy will receive her portion of her grandparents' trust principal, which is approximately one half of $1,335,000.
¶ 6 The Trustee, Ralph, Ralph, filed a petition in superior court, asking the trial court to consolidate the trusts and to modify the trust to create a "special needs" trust on Nancy's behalf, instead of distributing the trust principal to her. Clerk's Papers (CP) at 4. He explained that, under the current trust, when her parents die, Nancy's portion of the principal will be distributed to her and the trust will terminate. He argued that a special needs trust is necessary because, upon distribution, Nancy's trust funds would either be seized by the State of Washington to pay her extraordinary medical bills or Nancy would manage the funds poorly due to her mental illness and lack of judgment. He argued that the modification would preserve and properly manage Nancy's funds for her benefit.
¶ 7 The trial court granted the motion to consolidate the trusts but denied the motion to modify. It stated that it did not have the power to modify the trust unless unanticipated events existed that were unknown to the trust creator that would result in defeating the trust's purpose. The trial court found that the trust's purpose was "to provide for the education, support, maintenance, and medical care of the beneficiaries" and that a modification would only "permit[] the family to immunize itself financially from reimbursing the State for costs of [Nancy's medical] care." CP at 54, Report of Proceedings (RP) at 4. Relying on the Restatement (Second) of Trusts, it stated that it would not allow a modification "merely because a change would be more advantageous to the beneficiaries." CP at 53; RESTATEMENT (SECOND) OF TRUSTS § 66(1) cmt. b (2001). It did not issue factual findings or legal conclusions with its order but incorporated its reasoning from its oral ruling into the order.
¶ 8 Ralph moved for reconsideration, arguing that the Trust and Dispute Resolution Act, chapter 11.96A RCW (TEDRA) and the Restatement (Third) gave the trial court plenary power to handle all trusts and trust matters and the authority to modify the consolidated trust into a special needs trust. Ralph argued that, because the grandparents directed the trust proceeds to be distributed to their grandchildren when they reach the age of thirty-five, the settlors intended that their grandchildren attain a level of responsibility, stability, and maturity to handle the funds before receiving the distribution. He also argued that due to Nancy's mental illness, allowing a distribution to her would defeat the settlors' intent and the trust's purpose.
¶ 9 The trial court denied the motion for reconsideration. It again issued no factual findings or legal conclusions, but it stated that its decision was based on the findings and conclusions articulated in its oral ruling on the motion for reconsideration. On reconsideration, the trial court agreed that the Restatement (Third) of Trusts-allowed the court to modify an administrative or distributive protection of a trust if, because of circumstances the settlor did not anticipate, the modification or deviation would further the trust's purpose. It then stated:
I believe that there is a showing here that there is a circumstance that was, perhaps, not anticipated by the original settler [sic]; however, the purpose of the trust is to provide for the general support and medical needs of the beneficiaries. I think that modifying the trust in a fashion that makes some of those assets less available for that purpose than they would be under the express language of the trust presently is *891 not consistent with the purpose of the trust.
CP at 107. The trial court reasoned that because the trust was written to provide for "medical care" and because creating a special needs trust would make some money unavailable for medical care expenses, the modification was inconsistent with the trust's purpose. CP at 101. Ralph now appeals.

ANALYSIS
I. STANDARD OF REVIEW
¶ 10 Ralph contends that the standard of review in this case is de novo. He is partially correct. Whether equitable relief is appropriate, or whether the trial court should have modified the trust, is a question of law, which we review de novo. Niemann v. Vaughn Cmty. Church, 154 Wash.2d 365, 374, 113 P.3d 463 (2005) (citing Puget Sound Nat'l Bank of Tacoma v. Easterday, 56 Wash.2d 937, 943, 350 P.2d 444 (1960); Townsend v. Charles Schalkenbach Home for Boys, Inc., 33 Wash.2d 255, 205 P.2d 345 (1949)).
¶ 11 But determining the parties' intent in regard to a trust is a factual question. Niemann, 154 Wash.2d at 374-75, 113 P.3d 463. We review findings of fact under a substantial evidence standard, determining whether the evidence was sufficient to persuade a rational fair-minded person the premise is true. Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wash.2d 169, 176, 4 P.3d 123 (2000). If this standard is satisfied, we will not substitute our judgment for that of the trial court even though we may resolve a factual dispute differently. Croton Chem. Corp. v. Birkenwald, Inc., 50 Wash.2d 684, 314 P.2d 622 (1957). Therefore, this case presents a mixed question of law and fact. We give deference to the trial court's factual findings in regard to the trust, but we review the trial court's decision to deny equitable relief and not modify the trust de novo. Niemann, 154 Wash.2d at 375, 113 P.3d 463.
II. TRUST MODIFICATION
¶ 12 Ralph asserts that the trial court had the authority to modify the trust under both the equitable deviation doctrine and under the plenary power granted by TEDRA. TEDRA states that it is the Legislature's intent to give courts full and ample power to administer and settle all trust matters. RCW 11.96A.020. On reconsideration, the trial court agreed that it possessed the power to modify a trust. It stated that it could modify an administrative or distributive protection of a trust if, because of circumstances the settlor had not anticipated if the modification would further the trust's purpose. The trial court understood that it possessed the ability to modify the trust.
¶ 13 Next, Ralph contends that the trial court erred in declining to modify the trust. He explains that a modification would further the trust's purpose because, if George and Irene had anticipated that Nancy would suffer debilitating mental illness requiring extraordinary levels of medical costs and make her incapable of managing her money independently, they would not have structured the trust to leave a substantial outright distribution of the trust principal to her. He contends that the settlors instead would have established a special needs trust to protect the funds because Nancy's medical bills would be extraordinary and covered by state funding.
¶ 14 Ralph explains that the settlors conditioned the distribution of trust assets on her being at least thirty-five years old, indicating that they intended that their grandchildren have a level of maturity and stability before receiving the trust distribution. Ralph asserts that given Nancy's medical conditions and inability to handle her finances independently, she will never attain a level of maturity to handle the distribution of funds; therefore a special needs trust is appropriate.
¶ 15 Niemann is very instructive in this case. In Niemann, our Supreme Court held that trial courts may use "equitable deviation" to make changes in the manner in which a trust is carried out. Niemann, 154 Wash.2d at 378, 113 P.3d 463. The court outlined the two prong approach of "equitable deviation" used to determine if modification is appropriate. Niemann, 154 Wash.2d at 378, 113 P.3d 463. The court "may modify *892 an administrative or distributive provision of a trust, or direct or permit the trustee to deviate from an administrative or distributive provision, if [(1)] because of circumstances not anticipated by the settlor [(2)] the modification or deviation will further the purposes of the trust." (Niemann, 154 Wash.2d at 381, 113 P.3d 463; RESTATEMENT (THIRD) of Trusts § 66(1) (2001)). In Niemann, the court adopted the Restatement (Third) of Trusts and noted that the Restatement (Third) requires a lower threshold finding than the older Restatement and gives courts broader discretion in permitting deviation of a trust. Niemann, 154 Wash.2d at 381, 113 P.3d 463.
¶ 16 The first prong of the equitable deviation test is satisfied if circumstances have changed since the trust's creation or if the settlor was unaware of circumstances when the trust was established. RESTATEMENT (THIRD) OF TRUSTS § 66 cmt. a (2001). Upon a finding of unanticipated circumstances, the trial court must determine if a modification would tend to advance the trust purposes; this inquiry is likely to involve a subjective process of attempting to infer the relevant purpose of a trust from the general tenor of its provisions. RESTATEMENT (THIRD) OF TRUSTS § 66 cmt. b (2001).
¶ 17 The reason to modify is to give effect to the settlor's intent had the circumstances in question been anticipated. RESTATEMENT (THIRD) OF TRUSTS § 66 cmt. a (2001). Courts will not ordinarily deviate from the provisions outlined by the trust creator but they undoubtedly have the power to do so, if it is reasonably necessary to effectuate the trust's primary purpose. Niemann, 154 Wash.2d at 382, 113 P.3d 463. A trust settlor may possess a myriad of intentions in settling a trust, but the trial court must concern itself with their primary objective. Niemann, 154 Wash.2d at 382, 113 P.3d 463.
¶ 18 As stated above, we defer to the trial court's factual findings. Niemann, 154 Wash.2d at 375, 113 P.3d 463. In this case, the trial court did not issue formal factual findings, but it stated in the oral ruling that there was a showing of a changed circumstance in this case. This meets the first prong. The settlor's intent is also a factual question. Niemann, 154 Wash.2d at 374-75, 113 P.3d 463. The trial court found in its oral ruling that the "stated" purpose of the trust is to provide for the beneficiaries' education, support, maintenance, and medical care. CP at 54. Thus, it found that this trust's primary purpose was to provide for Nancy during her lifetime. Because the trust was to terminate at age thirty-five, it was also the settlors' intent that Nancy have the money to dispose of as she saw fit, which would include any estate planning that she might choose to do.
¶ 19 There is no question that changed circumstances have intervened to frustrate the settlors' intent. Nancy's grandparents intended that she have the funds to use as she saw fit. Not only is Nancy unable to manage the funds or to pass them to her son, but there is a great likelihood that the funds will be lost to the State for her medical care. It is clear that the settlors would have wanted a different result.
¶ 20 In 1993, as part of the Omnibus Budget Reconciliation Act, Congress set forth a requirement for creating special needs trusts (or supplemental trusts), intended to care for the needs of persons with disabilities and preserve government benefits eligibility while allowing families to provide for the supplemental needs of a disabled person that government assistance does not provide. Marla B. Karus, Special Issue: Special Needs Children in the Family Court, 43 FAM. CT. REV. 607, 610 (Oct.2005) (emphasis removed). The Act exempted certain assets from those assets and resources counted for the purposes of determining an individual's eligibility for government assistance. Pub.L. 103-66, § 13611(b), codified at 42 U.S.C. § 1396p(d)(4)(A). A supplemental needs trust is a trust that is established for the disabled person's benefit and that is intended to supplement public benefits without increasing countable assets and resources so as to disqualify the individual from public benefits. See Jill S. Gilbert, USING Trusts in Planning for Disabled Beneficiaries, WISCONSIN LAWYER (Feb.1997); Sullivan v. *893 County of Suffolk, 174 F.3d 282, 284 (2nd Cir.1999).
¶ 21 In this case, the trial court was concerned with fashioning a trust for Nancy that would allow the family to shield itself for "reimbursing the State" for the costs of her medical care due to her disability. RP at 4. But in 1993, Congress permitted the creation of special needs trusts in order to allow disabled persons to continue to receive governmental assistance for their medical care. MARLA B. KARUS, SPECIAL ISSUE: SPECIAL NEEDS CHILDREN IN THE FAMILY COURT, 43 FAM. CT. REV. 607, 610 (Oct.2005); Pub.L. 103-66, § 13611(b), codified at 42 U.S.C. § 1396p(d)(4)(A). Special needs trusts were created in order to allow disabled persons to continue receiving governmental assistance for their medical care, while allowing extra funds for assistance the government did not provide. Given this legal backdrop, the trial court should not have considered any loss to the State in determining whether an equitable deviation is allowed. The law invites, rather than discourages, the creation of special needs trusts in just this sort of situation. The proper focus is on the settlors' intent, the changed circumstances, and what is equitable for these beneficiaries.
¶ 22 George and Irene both died without creating a special needs trust but did not know of Nancy's mental health issues or how they might best be addressed. They clearly intended to establish a trust to provide for their grandchildren's general support, not solely for extraordinary and unanticipated medical bills.
¶ 23 We remand to the trial court to reconsider this matter and to order such equitable deviation as is consistent with the settlors' intent in light of changed circumstances.
We concur: HOUGHTON, C.J., and VAN DEREN, J.
NOTES
[1] We use first names where necessary to avoid confusion. No disrespect is intended.