*In re Robert G. Kay Irrevocable Supplemental Needs Trust*, No. 808-9-18 Cncv (Toor, J., June 6, 2019).
*In re Benjamin R. Kay Irrevocable Supplemental Needs Trust*, No. 809-9-18 Cncv (Toor, J., June 6, 2019).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
CHITTENDEN UNIT
CIVIL DIVISION

| | |
|---|---|
| IN RE: ROBERT G. KAY IRREVOCABLE SUPPLEMENTAL NEEDS TRUST u/a 4/7/95 BENJAMIN R. KAY IRREVOCABLE SUPPLEMENTAL NEEDS TRUST u/a 11/9/95 | Docket Nos. 808-9-18 Cncv and 809-9-18 Cncv |

RULING ON DEPARTMENT'S MOTIONS FOR SUMMARY JUDGMENT

This is an appeal from the Probate Division's denial of a petition to modify two trusts. The two supplemental needs trusts at issue were created in 1995 by Pamela Kay for the benefit of her two adopted sons, Robert G. Kay and Benjamin R. Kay. The trusts were initially funded with assets owned by Robert and Benjamin, so that those assets were not counted as "resources" for purposes of determining Medicaid eligibility.

Pamela died in 2006, and over $271,000 from her retirement account was deposited into the trusts shortly thereafter, pursuant to her beneficiary designation form. The trust instruments subject all funds remaining at a beneficiary's death to a Medicaid payback clause, even though Medicaid law requires reimbursement only for first-party assets (i.e., assets owned by the beneficiaries) and not for third-party assets (i.e., the retirement funds contributed by Pamela). After Robert died in 2012, the State of Vermont demanded over $134,000 from the remaining funds in Robert's trust as reimbursement for medical expenses.

Pamela's brother and the current trustee, Petitioner David C. Kay, now seeks to modify both trusts to prevent exposure of third-party trust assets to Vermont Medicaid, and to allow remaining funds in Robert's trust to go instead to Benjamin's trust. The State of Vermont Department of Health Access, an interested party, moves to dismiss or, alternatively, for summary judgment. William E. Drislane and Cynthia L. Broadfoot, Esqs. represent Petitioner. Jared C. Bianchi, Esq. represents the Department of Health Access.

## I.   Facts[1]

The following facts are undisputed unless noted otherwise. Pamela J. Kay was the mother of two sons by adoption, Benjamin R. Kay and Robert G. Kay. Pamela, as settlor and initial trustee, established two irrevocable first-party supplemental needs trusts for her sons: one for Robert on April 7, 1995 (the "Robert Trust"), and a second for Benjamin on November 9, 1995 (the "Benjamin Trust"). The purpose of the trusts was to provide for the special needs of her sons, who were both Vermont Medicaid beneficiaries. Pamela's attorney, Aaron J. Goldberg, designed the trusts "pursuant to federal and Vermont law as an estate plan for Pamela to protect the benefits of her sons by transferring their personal first-party assets to their respective trusts." First Goldberg Aff. ¶ 35 (Dep't's Ex. 1).[2]

The stated intent of the trusts "is to supplement any [governmental assistance] benefits received . . . and not to supplant any such benefits." Trust Agreement at 1. The

---

[1] Because the statements of facts and the record evidence are largely identical in the two cases, all references are to the exhibits in Robert's case, unless otherwise noted.

[2] Petitioner contends that those are "incomplete" statements of the purpose and design of the trusts. Pet'r's Resp. to Dep't's Statement of Undisputed Material Facts ¶¶ 2–3. Petitioner asserts that Pamela's "donative intent was to convey at the time of her death her entire gross estate to the benefit of her sons and their families without compromising their public benefits and did not intend her own assets to be inherited by the State of Vermont as a donative beneficiary." Pet'r's Statement of Disputed Facts ¶ 1. Petitioner further asserts that the trusts were "not designed, drafted[,] or intended to be used as a vehicle for Pamela's own personal estate plan." Id. ¶ 2 (citing Second Goldberg Aff. ¶¶ 2–7).

trust estate includes property transferred to the trust by the Settlor or other third parties. Id. at 2. The trusts terminate upon depletion of their assets or the death of the beneficiary, whichever occurs earlier. Id. at 8. If terminating upon the beneficiary's death, "the Trustee shall distribute any remaining principal and income unto the State of Vermont, up to an amount equal to the total Medicaid payments paid on behalf of [the beneficiary] under a State Plan." Id.

On November 13, 1995, Pamela opened a personal IRA account in the approximate amount of $25,000 and executed a beneficiary designation form naming the two trusts as beneficiaries. First Goldberg Aff. ¶ 38 (Dep't's Ex. 1). At some point between 2003 and 2006, Pamela deposited approximately $200,000 in additional IRA funds. Id. ¶ 42.

On December 11, 2006, Pamela executed a will, drafted by Aaron Goldberg, giving the bulk of her estate to Goldberg, as trustee, "to hold such assets[] IN TRUST" for the benefit of her sons. Last Will and Testament of Pamela Jane Kay at 2 (Dep't's Ex. 5). The will also gives Goldberg "absolute authority to make distributions of principal or income" for the benefit of either of her sons. Id. at 2. Pamela died on December 20, 2006. At that time, the IRA was valued at $271,295.00. Upon Pamela's death, Goldberg became the successor trustee of the Robert Trust and the Benjamin Trust, the executor of Pamela's estate, and the trustee of Pamela's testamentary trust. On April 4, 2007, Goldberg funded the Robert Trust and the Benjamin Trust with the IRA funds, pursuant to Pamela's beneficiary designation form. First Goldberg Aff. ¶ 49 (Dep't's Ex. 1).

Robert G. Kay received Medicaid benefits and the benefits of his supplemental needs trust from January 1, 1987 until he died on February 28, 2012. Whalen Aff. ¶¶ 2, 5,

6 (Dep't's Ex. 7); First Goldberg Aff. ¶ 5 (Dep't's Ex. 1).[3] Pursuant to the terms of the Robert Trust, it terminated upon Robert's death. Trust Agreement at 8 (Dep't's Ex. 3). The State of Vermont expended $134,268.66 for Robert's medical care. Whalen Aff. ¶ 5 (Dep't's Ex. 7). The Department now asserts that this amount must be paid back to Vermont Medicaid under the terms of the Robert Trust. Robert's brother, Benjamin, is alive and receiving Medicaid benefits. To date, the State has expended $172,119.68 for Benjamin's medical care. Whalen Aff. ¶¶ 4–5 (Dep't's Ex. 7).[4]

On November 28, 2017, Goldberg petitioned the probate court to modify the Robert and Benjamin Trusts. Probate case docket sheet at 1 (Dep't's Ex. 8). The petition sought to add language to the trust agreements stating that third-party assets are not subject to the Medicaid payback provision.[5] Pet. for Modification at 8–9 (Dep't's Ex. 6). On December 11, 2017, David C. Kay became the second successor trustee and, accordingly, the substitute petitioner. Dep't's Ex. 8.

On June 28, 2018, the probate court appointed Attorney Richard Kozlowski as a special fiduciary for the limited purpose of ensuring that any potential claim of breach of fiduciary duty against Goldberg was fully and independently explored. Dep't's Ex. 10. On July 20, Kozlowski filed a report detailing his investigation and conclusion. Dep't's Ex. 11. The probate court denied the petition to modify, holding that "as a matter of law, a testator's intent (written or otherwise) cannot override a prior beneficiary designation

---

[3] Petitioner claims to dispute the "timing of benefits received from 1995 trust," Pet'r's Resp. to Dep't's Statement of Undisputed Material Facts ¶ 22, but offers no citation to any record evidence in support of his assertion.

[4] This citation refers to the Whalen affidavit in Benjamin's case.

[5] It appears that such language is consistent with Medicaid law. The Department does not argue otherwise.

made in accordance with the governing terms of the account, or policy, at issue (here, the IRA owned by the late Pamela Kay)." Dep't's Ex. 12. This appeal followed.

## II.  Discussion

Petitioner seeks to modify the Robert and Benjamin Trusts pursuant to the Vermont Trust Code, specifically 14A V.S.A. §§ 411(b), 412, and 415. In a probate appeal under V.R.C.P. 72, "the proceeding in the superior court is a hybrid of an appeal from the probate court . . . and a de novo proceeding that is conducted as if the probate court proceeding never occurred." In re Estates of Allen, 2011 VT 95, ¶ 8, 190 Vt. 301 (citing Whitton v. Scott, 120 Vt. 452, 458 (1958)). The statement of questions required by Rule 72(c), while mandatory, has a "limited function" as it only "serves to focus, but cannot limit, the issues for the court." Id. (citing In re Estate of Doran, 2010 VT 13, ¶ 14, 187 Vt. 349).

### A.  Statute of Limitations

The Department first contends that the trust modification petition is time-barred because the latest possible accrual date was in 2007, when Pamela Kay's IRA funds were deposited into her sons' trusts, well outside the six-year statute of limitations applicable to general civil actions under 12 V.S.A. § 511. Petitioner argues that no statute of limitations applies to the modification of a trust and that even assuming the six-year limitations period applies, accrual did not occur until 2012, when Robert Kay died leaving third-party IRA assets in his trusts.[6]

---

[6] Kowlowszki's report asserts that the six-year statute of limitations for a legal malpractice claim against Goldberg accrued "when it was revealed that the State has a claim against Robert's [supplemental needs trust]," which was "initially made on May 25, 2017." Kozlowski Report at 4–5 (Dep't's Ex. 11).

Whether a trust modification petition is subject to a statute of limitations is apparently a matter of first impression in Vermont. The Vermont Trust Code provides specific limitations periods for breach of trust actions brought against a trustee, *see* 14A V.S.A. § 1005(a) and (c), and for actions contesting the validity of a revocable trust, *see* 14A V.S.A. § 604, but not for trust modification. *See* 14A V.S.A. §§ 410–416. The Department cites two cases, both of which are distinguishable. *See* Estate of Alden v. Dee, 2011 VT 64, ¶ 20, 190 Vt. 401 (holding that breach of fiduciary duty claim against trustee was time-barred under 12 V.S.A. § 511); In re Admin. of C.H. Young Revocable Living Tr., 751 N.W.2d 715, 717 (S.D. 2008) (affirming lower court's ruling that doctrine of laches precluded modification of trust instrument, but not addressing statute of limitations issue).

"In . . . actions in equity to have instruments reformed, . . . it is generally agreed that the appropriate statute [of limitations] may be interposed as a defense . . . ." 66 Am. Jur. 2d Reformation of Instruments § 88. However, "there is no agreement beyond that as to what particular statute is appropriate inasmuch as this question depends upon the particular statutes in the various jurisdictions" and their respective interpretation. Id. Some states apply the statute of limitations "governing relief on the grounds of fraud or mistake," while others apply statutes that "establish a limitation period for actions or relief not otherwise provided for in the statutes of limitations." Id. Accordingly, "no general rule covering all jurisdictions can be stated" as to which statute of limitations might apply. Annotation, What Statute of Limitations Governs Action to Reform Instrument, 36 A.L.R.2d 687 (originally published in 1954).

With respect to trusts, courts have generally held that reformation based on mistake is subject to a statute of limitations. *See*, *e.g.*, Getty v. Getty, 232 Cal. Rptr. 603,

607–08 (Cal. Ct. App. 1986) (applying 3-year limitations period for "action[s] for relief on the ground of fraud or mistake"); Collins v. Richardson, 212 P.2d 302, 306 (Kan. 1949) (applying five-year limitations period for "action[s] for relief not hereinbefore provided for"); Mason v. Univ. of the South, 212 S.W.2d 854, 856 (Tex. Civ. App. 1948) (applying four-year limitations period from since-repealed statute); *but see* Ditta v. Conte, 298 S.W.3d 187, 192 (Tex. 2009) (holding that trustee removal action not subject to any statute of limitations, and analogizing to other "status" cases such as divorce actions and real property cloud on title cases). Notably, Petitioner cites this court to no authority holding that trust reformation actions are not subject to a statute of limitations.

Vermont does not have a statute of limitations specific to trust reformation petitions, or actions based on mistake. However, there is a residual statute of limitations applicable to civil actions generally: "A civil action, . . . except as otherwise provided, shall be commenced within six years after the cause of action accrues and not thereafter." 12 V.S.A. § 511. In observing that this statute applies to quasi-contract theories such as unjust enrichment and restitution "equally as well as it applies to other civil actions," the Supreme Court noted that "[s]tatutes of limitations apply to virtually every legal action." Stankiewicz v. Estate of LaRose, 151 Vt. 453, 456 (1989). This court sees no reason why this statute should not apply to trust reformation actions that are based on a specific event, such as a mistake in the drafting of the instrument, or unanticipated circumstances.

Under the discovery rule, "the limitations period begins to run 'when the plaintiff has or should have discovered both the injury and the fact that it *may* have been caused by the defendant's negligence or other breach of duty.'" Rodrigue v. VALCO Enterprises, Inc., 169 Vt. 539, 541 (1999) (emphasis in original) (quoting Lillicrap v. Martin, 156 Vt. 165, 175 (1989)). More specifically, a cause of action accrues:

7

> upon the discovery of facts constituting the basis of the cause of action *or* the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery. Thus, the statute of limitation begins to run when the plaintiff has notice of information that would put a reasonable person on inquiry, and the plaintiff is ultimately chargeable with notice of all the facts that could have been obtained by the exercise of reasonable diligence in prosecuting the inquiry.

Estate of Alden v. Dee, 2011 VT 64, ¶ 20, 190 Vt. 401 (citing Kaplan v. Morgan Stanley & Co., 2009 VT 78, ¶ 7, 186 Vt. 605 (mem.)); *see also* Galfetti v. Berg, Carmolli & Kent Real Estate Corp., 171 Vt. 523, 524–25 (2000); Agency of Nat. Res. v. Towns, 168 Vt. 449, 452 (1998).

The Department contends that the action accrued as early as 1995, when the trust was drafted, and at the latest in 2007, when the IRA funds were transferred to the trusts. It contends that Pamela Kay and Goldberg "were charged with being aware and understanding the terms of the trusts" in 1995, and that Goldberg, "as former successor trustee" who "drafted the terms of the trusts and deposited the IRA funds into the trusts . . . clearly was aware of the facts constituting the basis of this cause of action" by 2007. Motion for Summ. J. at 5–6. However, as Petitioner correctly asserts, the trust beneficiaries are the real parties in interest here. While the general rule is that an action must be prosecuted in the name of the real party in interest, a "trustee of an express trust . . . may sue in that person's own name without joining the party for whose benefit the action is brought . . . ." V.R.C.P. 17(a).

The Department cites no authority for the idea that a beneficiary is charged with knowledge of a trustee's mistake for statute of limitations purposes. Caselaw concerning breach of trust actions suggests the contrary. *See*, *e.g.*, Demoulas v. Demoulas Super Markets, Inc., 677 N.E.2d 159, 173–74 (Mass. 1997) ("a cause of action does not accrue

until the trustee repudiates the trust *and* the beneficiary has actual knowledge of that repudiation") (emphasis in original); <u>Cundall v. U.S. Bank</u>, 909 N.E.2d 1244, 1251 (Ohio 2009) (limitations period began to run when trust "beneficiaries knew, or in the exercise of reasonable diligence should have known, of the possibility" of alleged fraud); <u>Kaneda v. Kaneda</u>, 45 Cal. Rptr. 437 (Cal. Ct. App. 1965) (resulting trust beneficiaries who had no knowledge of trustee's alleged repudiation of resulting trust more than four years before one of trustee's grantees instituted action to partition the land and who claimed interest in the land during the four-year period were not barred by four-year statute of limitations from asserting resulting trust as defense); <u>Knox v. Knox</u>, 25 N.W.2d 225, 232 (Minn. 1946) ("Knowledge will be imputed to the plaintiff [beneficiary] when, by the exercise of reasonable care, he should have known of the circumstances revealing defendant's adverse and inequitable role.") (citing 3 Bogert, Trusts and Trustees, Part 1 (1946 Ed.) § 472, p. 12).

Under the Department's logic, the statute of limitations in a trust reformation case would start to run from the moment the mistake was made, regardless of when it reasonably should have been discovered. That result is untenable, and contradicts Vermont's well-established discovery rule. *See* <u>Rodrigue</u>, 169 Vt. at 541. There is sufficient evidence to establish the existence of a disputed material fact as to when the alleged mistake reasonably should have been discovered. *See* Kozlowski Report at 4–5 (Dep't's Ex. 11); Drislane Aff. ¶¶ 2, 4 (Pet'r's Ex. 16) (asserting that there was "considerable difficulty" in developing the facts from 1995 through 2006, and that "[c]ritical records and evidence regarding the establishment and initial funding of the 1995 trusts were discovered in 2015 and 2016"). The Department is not entitled to summary judgment on statute of limitations grounds.

## B. Laches

As an alternative to its statute of limitations argument, the Department also contends that trust modification is barred by the doctrine of laches. Laches is "an equitable defense that bars relief when a party fails 'to assert a right for an unreasonable and unexplained lapse of time.'" In re McCarty, 2013 VT 47, ¶ 15, 194 Vt. 109 (quoting Comings & Livingston v. Powell, 97 Vt. 286, 293 (1923)). A lapse of time is not sufficient. "Laches involves prejudice, actual or implied, resulting from the delay. It does not arise from delay alone, but from delay that works disadvantage to another." Id. (quoting Comings, 97 Vt. at 294). The Department argues that the alleged mistakes occurred many years ago, and that it is prejudiced by the unavailability of testimony from Pamela and Robert, Attorney Goldberg's retirement, and the possibility that reformation of the trust might render the beneficiaries retroactively ineligible for Medicaid.

The court is not persuaded that laches bars the proposed trust modification. While the trust was drafted in 1995 and the IRA fund transfer occurred in 2007, the court cannot say that the lapse of time was unreasonable or unexplained. There is evidence that the alleged mistakes in the trust instrument and the IRA fund transfer did not come to light until much more recently. *See* Drislane Aff. ¶¶ 2, 4 (Pet'r's Ex. 16). Moreover, the Department cannot demonstrate prejudice from the delay. Were Pamela and Robert still alive, it is likely that any testimony from them would benefit Petitioner and not the Department, and it is unclear how Attorney Goldberg's retirement is prejudicial. The possibility that reformation could lead to retroactive Medicaid ineligibility would only benefit the Department, as it then might be entitled to some degree of repayment. On these facts, laches does not provide a basis for summary judgment.

## C. Modification by Consent (14A V.S.A. § 411(b))

Petitioner argues that the trust can be modified based on the consent of Benjamin Kay, whom Petitioner contends is the "sole living beneficiary" of the two trusts. Pet'r's Resp. at 14. "A noncharitable irrevocable trust may be modified upon consent of all of the beneficiaries if the [court] concludes that modification is not inconsistent with a material purpose of the trust." 14A V.S.A. § 411(b).

Despite the Medicaid payback provision, *see* Trust Agreement at 8 (Pet'r's Ex. 3), Petitioner contends that the State is not a beneficiary, but a creditor. Petitioner cites no authority to support this contention, aside from the vague assertion that "based on statute and equity, including the law of restitution and unjust enrichment, the court may declare the State's status as creditor only of [the trusts, and] that the State is not a beneficiary of Pamela's third-party asset." Pet'r's Resp. at 15.

This argument is directly contrary to the statutory language, which defines "[b]eneficiary" as "a person that [] has a present or future beneficial interest in a trust, vested *or contingent*." 14a V.S.A. § 103(a)(A) (emphasis added). The trust code further clarifies that "person" includes a "government" or a "governmental subdivision, agency, or instrumentality . . . ." Id. § 103(10). The State is clearly a contingent beneficiary and does not consent to modification. Therefore, Petitioner cannot modify the trusts under section 411(b).[7]

---

[7] The trust code provides an alternative means of modification by consent even if not all of the beneficiaries consent. *See* 14A V.S.A. § 411(e) ("if the . . . court is satisfied that: (1) if all of the beneficiaries had consented, the trust could have been modified or terminated under this section; and (2) the interests of a beneficiary who does not consent will be adequately protected"). The Department argues that subsection (e) is inapplicable. However, because Petitioner does not argue for modification under subsection (e), the court need not address it.

Petitioner also points to another probate case in which the Department contented to the modification of a trust, Pet'r's Ex. 19, and contends that "in fairness the Department should do the same" for the current petition to modify. Pet'r's Opp'n at 11–12. Petitioner cites no legal basis for this argument.

### D. Reformation to Correct Mistakes (14A V.S.A. § 415)

The trusts unambiguously provide that, upon termination, "any remaining principal and income" shall be paid to the State of Vermont for Medicaid reimbursement purposes. Trust at 8. Petitioner asserts that the trusts are flawed in that "the drafter by mistake or error invited 'the settlor and other third parties' to contribute to the trust[s], but omitted terms to expressly exempt third-party assets from the . . . pay-back provision and limit the provision exclusively to first-party assets." Pet'r's Statement of Disputed Facts ¶ 6 (citing Trust at 2; Second Goldberg Aff. ¶¶ 9–14). Petitioner seeks to reform the trusts to correct that claimed mistake.

"[C]ourts will not reform a trust simply because [it] would be desirable for the settlor or the beneficiaries." Bogert's Trusts And Trustees § 991 (June 2018 update). However, the court "may reform the terms of a trust, even if unambiguous, to conform the terms to the settlor's intention if it is proved by clear and convincing evidence that both the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement." 14A V.S.A. § 415. Reformation of an instrument "to correct a mistake of law or fact is a long-established remedy." Id., Official Comment. Because it "may involve the addition of language not originally in the instrument . . . if necessary to conform the instrument to the settlor's intent . . . , reliance on extrinsic evidence is essential." Id.

The court may consider evidence relevant to the settlor's intent "even though it contradicts an apparent plain meaning of the text." Id. The "higher standard" of clear and convincing evidence is required "[t]o guard against the possibility of unreliable or contrived evidence" or "fraudulent testimony[.]" Id. Thus, to reform the trusts pursuant to section 415, Petitioner must prove by clear and convincing evidence both that the terms of the trust were affected by a mistake, and that the settlor's intention was for the Medicaid payback clause not to unnecessarily apply to third-party assets.

Regarding the issue of mistake, Attorney Goldberg asserts that he made an error in drafting the instruments, and this error clearly affected the Medicaid payback provision in the trusts. *See* Second Goldberg Aff. ¶¶ 9–14 (Pet'r's Ex. 2). The problem with this assertion is that at the time the trusts were drafted, despite Attorney Goldberg's "recommended treatise language" inviting contributions from third parties, *see* 2nd Goldberg Aff. ¶ 9; Trust at 2, there was no specific plan to add third-party funds. According to Goldberg, he and Pamela never discussed her personal assets when setting up the trusts. *See* First Goldberg Aff. ¶ 36. Any mistake, if there was one, came separately when Pamela executed the IRA beneficiary designations. That is not a mistake in the creation of the trusts.

Even if the court were to accept the idea that the error was not Pamela's separate designation but Attorney Goldberg's drafting, that does not resolve the issue of intent. To demonstrate Pamela's intent, Petitioner points to several pieces of evidence. First, the trust provides that the trust property is to be "distributed to the beneficiaries named herein upon Robert's death," including Robert's surviving spouse, if any, children, if any,

and the Benjamin Trust, in that order. Trust at 1, 8 (Pet'r's Ex. 3).[8] Second, Pamela's Will grants the remainder of her estate to a testamentary trust for her two sons. Last Will and Testament of Pamela Jane Kay at 2 (Pet'r's Ex. 4). Third, Pamela's 2005 Merchant's Bank beneficiary designation form named Benjamin and his then-wife Amanda as beneficiaries. Pet'r's Ex. 5. Fourth, Pamela's 1995 IRA beneficiary designation form with A.G. Edwards & Sons, Inc. named the two trusts as beneficiaries. Pet'r's Ex. 6. Fifth, Goldberg's counsel to Pamela in 1995 concerned only the assets of her sons, and not Pamela's own personal assets. First Goldberg Aff. ¶ 36 (Pet'r's Ex. 1); Pamela's notes from mid-1995 (Ex. 7).[9] Finally, Goldberg also asserts that "[u]pon information and belief[,] Pamela did not intend her personal IRA assets to be exposed to the payback terms of the Robert Trust and the Ben Trust, if the federal and state payback rule was not applicable to her third-party IRA asset." First Goldberg Aff. ¶ 41 (Pet'r's Ex. 1).[10] Petitioner contends that this all shows Pamela's estate planning intent to leave her property to her sons and their families, instead of unnecessarily benefiting the State.

Petitioner's argument fails because of the heightened evidentiary standard here. To reform the trusts, the evidence of intent must be clear and convincing. 14A V.S.A. § 415.

---

[8] The Benjamin Trust similarly provides that any remaining trust property is to be distributed to Benjamin's surviving spouse, if any, children, if any, and the Robert Trust, in that order. Benjamin Trust at 1, 8 (Pet'r's Ex. 3 in Benjamin Trust filings).

[9] The Department objects that Pamela's notes are inadmissible hearsay. However, the notes might be admissible under the state of mind exception, *see* V.R.E. 803(3), or potentially as a recorded recollection. *See* V.R.E. 803(5). In any event, Goldberg's affidavit also provides independent evidence of his counsel to Pamela in 1995, assuming his assertion is based on personal knowledge and not wholly on the notes.

[10] Petitioner also points to email correspondence between Goldberg and Pamela's investment broker, David Shaw, just a few days before Pamela's death in December 2006. *See* Second Goldberg Aff. ¶ 23 and attached email correspondence labeled as Ex. S-3 (Pet'r's Ex. 2). The email discusses the subjects of Pamela's estate plan and provisions for her granddaughter. However, there is no affidavit from David Shaw, and therefore his statements in the email exchange are inadmissible hearsay. To the extent Petitioner relies on the 2007 email exchange between David Shaw and David Kay, that also appears to be inadmissible hearsay. Pet'r's Ex. 11. To the same effect is the document written by David Kay titled "Background relating to Pamela J. Kay with regard to her trusts," which is not presented in the form of an affidavit. Pet'r's Ex. 14.

While direct statements from the settlor are not required, *see* In re Estate of Tuthill, 754 A.2d 272, 275–76 and n.3 (D.C. 2000), the cases finding clear and convincing evidence involve more than is proffered here. *See*, *e.g.*, Griffin v. Griffin, 832 P.2d 810, 814 (Okl.1992) (upholding trial court's decision to grant reformation based on (1) undisputed testimony of tax attorney, (2) letter of attorney whom grantor consulted, and (3) admissions of executor of estate); Ike v. Doolittle, 70 Cal. Rptr. 2d 887, 897 (Cal. Ct. App. 1998) (finding clear and convincing evidence of settlor's intent through (1) testimony of drafter, (2) expert testimony on tax savings, (3) five supporting witnesses, and (4) the trust); Popp v. Rex, 916 So. 2d 954, 957–58 (Fla. Dist. Ct. App. 2005) (clear and convincing evidence established that settlor intended that share of deceased son without issue go to other son despite omission of trust provision for that contingency; evidence included: (1) testimony of drafting attorney; (2) testimony of financial advisor; and (3) separate revocable trust); In re Lock Revocable Living Trust, 123 P.3d 1241, 1249–51 (Haw. 2005) (affidavits by drafting attorney and settlor's sister-in-law made it clear that settlor intended distribution of trust assets only among surviving siblings, not deceased siblings' descendants).

The cases cited by Petitioner also do not support his case for reformation. While the North Dakota Supreme Court held in In re Matthew Larson Trust Agreement Dated May 1, 1996, 831 N.W.2d 388, 398 (N.D. 2013) that the settlors were entitled to reformation based on a mistake of law as to whether beneficiaries' siblings who were not settlors' lineal descendants would benefit from the trust, the evidence of the settlors' intent was clear. The settlors themselves testified as to their intent, and "[n]o evidence disput[ed] their testimony." Id. Similarly, the detailed offer of proof in Erickson v. Erickson, 716 A.2d 92, 95 n.8 (Conn. 1998) was sufficient to prove clearly and

convincingly that there was a scrivener's error that resulted in the failure to include a contingency of marriage clause in a will. Id. at 101 (reversing for a new trial and holding that trial court should have admitted extrinsic evidence regarding testator's intent, including conversations between testator and drafting attorney). The evidence in Larson and Erickson is substantially more convincing than the evidence provided here.

The court finds State St. Bank & Tr. Co. v. Alden, 830 N.E.2d 205 (Mass. 2005) particularly instructive. The evidence there—the drafting attorney's affidavit stating that the settlor's intent was to minimize estate taxes—was insufficient to override the settlor's deliberate and specific choice-of-law provision. Id. at 207. Similarly, here, Attorney Goldberg's affidavit is simply not enough to contradict the unambiguous Medicaid payback provision of the trusts under the clear and convincing evidentiary standard. Importantly, Goldberg's affidavit is not based on any clear statement by Pamela about her intent, but on "information and belief," including the other provisions of the trusts, Pamela's will, and her beneficiary designations.

It is clear that the primary purpose of each trust was to care for each son during his life and allow each to retain his Medicaid eligibility. Robert's trust had served its purpose when Robert died in 2012. What happens to remaining trust funds at each beneficiary's death is merely incidental to that primary purpose. *See* duPont v. Southern Nat'l Bank of Houston, Tex., 771 F.2d 874, 883–84 (5th Cir. 1985) (finding that primary purpose of trust was to shield property from then-wife and provide for son, and that tax consequences were "incidental to its creation"). Moreover, to say what Pamela's intent was with respect to remaining trust funds under the clear and convincing standard would require too much speculation. *See* Application of Last Will & Testament of Manville, 447 N.Y.S.2d 195, 199 (N.Y. Sur. Ct. 1982) ("Mere speculation or the assumption that every

16

person wishes to avoid the payment of burdensome taxes, cannot determine testator's intent.").[11] The express language of the trusts states that funds in the trusts at the time of Benjamin or Robert's death would go to repay the State. Pamela executed the IRA beneficiary designation despite that language. To argue that she did not intend such a result when the language is clear on its face defies logic.[12]

The clear-and-convincing-evidence standard "requires an assertion to be established by a high degree of probability, though not to an absolute or moral certainty or beyond a reasonable doubt." Restatement (Third) of Property (Wills & Don. Trans.) § 12.1, cmt. (e). This higher degree of proof allocates risk by "impos[ing] a greater risk of an erroneous factual determination on the party seeking reformation than on the party opposing reformation." Id. Even viewing the evidence in the light most favorable to the non-moving party, it does not establish by a "high degree of probability" that Pamela's intent was to avoid paying remaining third-party assets to the State. On this evidence, no fact-finder could reasonably conclude that reformation is warranted.

---

[11] The court recognizes that there is a line of New York cases, some cited by Petitioner, presuming that testators wish to reduce taxes and have the state pay the costs of medical care. *See*, *e.g.*, In re Shah, 733 N.E.2d 1093, 1099 (N.Y. 2000) ("[t]here can be no quarreling with the Supreme Court's determination that any person in [a permanent coma] would prefer that the costs of his care be paid by the State, as opposed to his family"); In re Will of Kamp ex rel. Kamp, 790 N.Y.S.2d 852, 856 (N.Y. Sur. Ct. 2005) ("the courts will presume a testator wishes to reduce taxes to the greatest extent possible and will reform the will to accomplish that result"); Estate of Escher, 407 N.Y.S.2d 106, 111 (N.Y. Sur. Ct. 1978), aff'd, 426 N.Y.S.2d 1008 (N.Y. App. Div. 1980), aff'd, 52 N.Y.2d 1006, 420 N.E.2d 91 (N.Y. 1981) ("It is divorced from the realities of life to presume that if testator were aware of the facts as they now exist, he would desire to pay the immense cost for his daughter's care in preference to having society share this burden."). If this were the law—a presumption—then no one would ever lose to the government in this type of case, no matter how they drafted their will or trust. Such an absurd result cannot possibly be the law.

[12] While the closeness in time between the trust creation and the IRA beneficiary designation might lead to an inference that the trust language influenced Pamela to designate the trusts as beneficiaries of the IRA account, one would also have to presume that she was aware of the clear language subjecting all trust funds to the Medicaid payback provision.

E. <u>Modification based on Unanticipated Circumstances (14A V.S.A. § 412)</u>

Under section 412, the court "may modify" the "administrative or dispositive terms" of a trust "if, because of circumstances not anticipated by the settlor, modification . . . will further the purposes of the trust. To the extent practicable, the modification must be made in accordance with the settlor's probable intention." 14A V.S.A. § 412(a). The purpose of "equitable deviation" is "not to disregard the settlor's intent but to modify inopportune details to effectuate better the settlor's broader purposes." <u>Id</u>., Official Comment. "While it is necessary that there be circumstances not anticipated by the settlor," this section does not require *changed* circumstances. <u>Id</u>. Thus, "the circumstances may have been in existence when the trust was created." <u>Id</u>. This section accordingly complements section 415 (reformation based on mistake at trust creation). <u>Id</u>. It is also "not necessary . . . that the situation be so serious as to constitute an 'emergency' or to jeopardize the accomplishment of the trust purposes." Restatement (Third) of Trusts § 66 (2003) cmt. (a). Section 412 does not require a showing of clear and convincing evidence.

Petitioner argues that modification is warranted here because Pamela funded the first-party Medicaid trusts "with her own IRA money pursuant to the advice and presentations of her attorney and broker, unaware that the advice and presentations were in error," and because modification "to remove the inadvertent exposure to [the State] would be in accord with the settlor's probable intention to provide for her disabled sons and their families." Pet'r's Response at 16. According to Petitioner, the circumstance of which she was unaware is "the fact that the plan, presentation[,] and document were

flawed." Id. at 16–17; *see also* Pet. ¶ 29 (Pet'r's Ex. 13) ("[Pamela] did not anticipate the circumstances she put into action by her IRA beneficiary designation of 1995.").[13]

Like the reformation cases, the unanticipated circumstances cases are highly fact-dependent, defying easy categorization. As the comment to the Restatement predicts, *see* Restatement (Third) of Trusts § 66 cmt. (a), virtually all the cases involved changed circumstances, although that is not required. *See*, *e.g.*, City of Augusta v. Attorney Gen., 943 A.2d 582, 591–92 (Me. 2008) (modifying 1815 charitable trust to allow city to sell property on which high school located, remove restrictions from property, and use sale proceeds to maintain trust and benefit new high school, where operation of high school was no longer permitted on property and modification would further settlor's "overriding purpose of educating youth"); In re Nobbe, 831 N.E.2d 835, 841–43 (Ind. Ct. App. 2005) (significant increase in value to stock was not the sort of unanticipated circumstance that justified equitable deviation); In re Trust D Created Under Last Will & Testament of Darby, 290 Kan. 785, 794, 234 P.3d 793, 800–01 (Kan. 2010) (devaluation of future distributions due to normal inflation is not an unanticipated circumstance that justifies modification).

Petitioner relies on In re Riddell, 157 P.3d 888 (Wash. Ct. App. 2007), as amended on reconsideration (July 3, 2007). There, a beneficiary's mental illness that developed after the creation of the trust was considered an unanticipated circumstance for purposes

---

[13] In the probate cases, Petitioner filed an amendment to his petition asserting that, in 2016, Benjamin Kay, Jr. (Benjamin Kay's son and Pamela's grandson) was sexually abused by his maternal grandfather and a companion of his grandfather and that Pamela "would not have anticipated or foreseen such events." Am. to Pet. at 1–2 (Pet'r's Ex. 14). Included with the amendment is a two-page written statement by David Kay titled "Background relating to Pamela J. Kay with regard to her trusts." The written statement, which is not in affidavit form, constitutes inadmissible hearsay. Furthermore, Petitioner does not argue in his briefing on appeal that the grandson's sexual abuse is an unanticipated circumstance that would be grounds for modification.

of modifying testamentary trusts into special needs trusts. Id. at 891–93. The facts of Riddell, however, do not demonstrate why modification is appropriate here. The unanticipated circumstance in Riddell was the beneficiary's mental illness, unknown to the settlors at trust creation. Here, the unanticipated circumstance articulated by Petitioner is the effect of the 1995 IRA beneficiary designation.[14]

Perhaps the most analogous case is Purcella v. Olive Kathryn Purcella Trust, 325 P.3d 987 (Alaska 2014). There, the settlor sought modification of an irrevocable trust based on an unawareness of the legal effect of the trust. She argued that she did not "anticipate[ ] that the circumstance would arise where she would have no control as to when or if her bills would be paid, or when or how her money was to be spent." Id. at 992. Affirming the trial court's decision that modification or termination was not warranted, the Alaska Supreme Court held that

> a misunderstanding about the effect of a legal instrument is not an unanticipated circumstance. Something "anticipated" is "foresee[n]," "give[n] advance thought," or "expect[ed]." That is, unanticipated circumstances are facts about the *future* that were not known to the settlor at the time the trust was executed and, if they had been known, would have caused the settlor to draft the trust provisions differently. That a settlor was mistaken about the legal effect of a trust is not an unforeseen fact about the future but a mistake "in expression in the trust" that might warrant reformation under AS 13.36.350(a).[15]

Id. at 992–93 (emphasis in original) (citations and footnotes omitted). As the Kansas

---

[14] Petitioner cites two additional cases modifying instruments to create special needs trusts. *See* In re Will of Kamp ex rel. Kamp, 7 Misc. 3d 615, 790 N.Y.S.2d 852 (N.Y. Sur. Ct. 2005) (reforming testamentary trust); In re Rappaport, 21 Misc. 3d 919, 866 N.Y.S.2d 483 (Sur. 2008) (reforming will). Both cases turned on the court's analysis of the testator's intent. Neither case offers much guidance here.

[15] The statute cited, Alaska Stat. 13.36.350(a), is Alaska's equivalent to 14A V.S.A. § 415 (reformation to correct mistake).

20

Supreme Court has similarly explained, "[c]ourts have generally been more willing to allow modification for unanticipated circumstances where there are truly unforeseen events resulting in economic hardship, the incapacity of a beneficiary, the impossibility or imprudence of a trust provision, or the diminution in value of a trust asset." Darby, 234 P.3d at 800; *see also* Niemann v. Vaughn Cmty. Church, 113 P.3d 463, 471 (Wash. 2005) ("[C]ircumstances not anticipated by the settlor . . . include significant congregational growth, limitations with the building and property, stricter development and building codes, drastic changes in the community . . . , including growth, expansion, and relocation of its business core, and . . . changes in the attitudes, expectations, and needs of parishioners compared with the 1950s.") (citation and quotations omitted).

Yet, even Purcella is not directly on point. While Purcella involved a settlor's mistaken understanding of the legal effect of the trust that she sought to modify, the modification sought here is based on Pamela Kay's subsequent IRA beneficiary designation to the trusts. Thus, modification of the trust is requested not because of a mistake in the trust, but because of a mistake in an instrument distinct from the trust. In other words, Petitioner is arguing that what was unforeseen when the trusts were created was the later beneficiary designations. While this court agrees with the implication in Purcella that one cannot make an end-run around the clear and convincing proof requirement of 14A V.S.A. § 415 by seeking modification under section 412 based on mistake, the same cannot be said for mistakes external to the trust instrument itself.

The Department, as the moving party, has the burden to demonstrate the absence of genuinely disputed material facts. However, the Department has failed to directly address Petitioner's grounds for modification under section 412. The Department argues only that evidence of the circumstances of Pamela's grandson and the unsworn statement

21

of David Kay are inadmissible hearsay. Motion for Summ. J. at 10–11. The court agrees and does not consider that evidence, but also notes that Petitioner does not even rely on that evidence as grounds for modification. *See* supra, note 13. The Department does not argue that Pamela was aware of the legal effect of her IRA beneficiary designation, nor does it offer a statement of undisputed fact to that effect.[16] The record does not dispositively establish that Petitioner cannot show by a preponderance of the evidence that (1) modification would further the purposes of the trusts, and (2) Pamela's probable intent was to avoid reimbursing the State for Medicaid expenses. *See* Pet'r's Ex. 3–6. Petitioner is entitled to an evidentiary hearing on this issue.

F.  Potential Retroactive Medicaid Eligilibility

The Department contends that modification might result in retroactive Medicaid eligibility because, even if an applicant is not ineligible due to resource limitations, they might still be ineligible as a result of income. Motion for Summ. J. at 7–8, 10; Dep't's Reply at 4–5. This, the Department contends, would be "inconsistent with a material purpose of the trust[s] . . . ." Motion for Summ. J. at 10. Although the Department makes this contention in the context of the laches issue and the section 411 claim, it is arguably pertinent to both sections 412 and 415 as well.

However, the Department includes no statement of undisputed fact to support its arguments regarding eligibility. Instead, it cites to Vermont Medicaid regulations, and asserts that such retroactive eligibility "cannot be determined with certainty." Dep't's

---

[16] The Department asserts that any mistake by Attorney Goldberg in failing to properly advise Pamela regarding her IRA beneficiary designations is a mistake in legal representation, not in the trust, and that the proper remedy is therefore a malpractice claim rather than reformation. Motion for Summ. J. at 14. Even if it does constitute malpractice, the Department fails to demonstrate that it cannot also fall under the purview of 14A V.S.A. § 412.

Reply at 4–5. The court cannot grant summary judgment on the basis of such vague claims.

## G. Unjust Enrichment and Restitution

Petitioner contends that, based on the doctrines of unjust enrichment and restitution, the court can "fashion a remedy to redirect the transferred IRA to the intended beneficiaries: in trust for Pamela's family without exposure to claims by the State of Vermont." Pet'r's Opp'n at 12–13. There is no claim for unjust enrichment or restitution in this case. This is a petition to modify a trust, and the Vermont Trust Code contains specific procedures for such an action. To the extent Petitioner is arguing that he is entitled to modification based on the doctrines of unjust enrichment and restitution even in the absence of meeting the Vermont Trust Code requirements, the court rejects that argument.

## III. Order

The Department's motions for summary judgment are granted in part and denied in part as set forth above. Petitioner is entitled to an evidentiary hearing on the issue of modification under 14A V.S.A. § 412. The court will schedule a half-day hearing. If counsel believe more time is required, please inform the court promptly.

Dated at Burlington this 6th day of June, 2019.

_____
Helen M. Toor
Superior Court Judge